No. 69,110

FLOYD E. LINDENMAN, ELAINE LINDENMAN, and WOOD HAVEN SCHOOLS, INC., *Appellants/Cross-Appellees*, v. SAM UMSHEID; KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT and STANLEY C. GRANT, PhD., SECRETARY; KANSAS CITY-WYANDOTTE COUNTY DEPARTMENT OF HEALTH and DARRELL D. NEWKIRK, DIRECTOR and WYANDOTTE COUNTY BOARD OF COUNTY COMMISSIONERS, *Appellees,* and THE CITY OF KANSAS CITY, KANSAS, *Appellee/Cross-Appellant.*

(875 P.2d 964)

Opinion filed June 3, 1994.

*John H. Fields*, of Carson & Fields, of Kansas City, argued the cause and was on the briefs for appellants.

*Marvin G. Stottlemire*, of Kansas Department of Health and Environment, argued the cause and was on the brief for appellee Kansas Department of Health and Environment.

*N. Jack Brown*, of Boddington & Brown, Chtd., of Kansas City, argued the cause, and *Kenneth E. Holm*, of the same firm, was with him on the brief for appellees Sam Umscheid, Kansas City-Wyandotte County Department of Health, and Darrell D. Newkirk.

*Maurice J. Ryan*, assistant city attorney, and *Harold T. Walker*, city attorney, were on the brief for appellee/cross-appellant City of Kansas City, Kansas.

*R. Wayne Lampson*, county counselor, was on the brief for appellee Wyandotte County Board of County Commissioners.

The opinion of the court was delivered by

LOCKETT, J.: The co-administrators of three Wood Haven Schools, Inc., (Wood Haven) day care centers filed an action against the Kansas Department of Health and Environment (KDHE), its secretary, the Kansas City, Kansas—Wyandotte County Department of Health (KC-WCDH), its director and one of its employees, the City of Kansas City, Kansas, (City) and Wyandotte County (County) for violation of their civil rights, malicious prosecution, and abuse of process. The defendants filed motions to dismiss and for summary judgment. The district court denied some of the motions but either dismissed or granted summary judgment to all of the defendants. Plaintiffs and defendants raised 17 issues and numerous subissues on appeal and cross-appeal. This court, on its own motion, transferred the case to its docket from the Court of Appeals.

Floyd E. and Elaine Lindenman are co-administrators of the day care centers operated by Wood Haven and licensed by KDHE and its secretary, Stanley C. Grant. KC-WCDH was a joint board of health for Wyandotte County and Kansas City, Kansas, of which Darrell D. Newkirk was the director and Sam Umscheid was an employee. The City and the County had statutory responsibility over KC-WCDH. The Lindenmans alleged that KC-WCDH and Umscheid were acting as individuals and on behalf of KDHE.

The Lindenmans and Wood Haven filed their original petition on March 11, 1991, and an amended petition on July 11, 1991. The amended petition alleged that on November 14, 1988, KDHE, without prior notice or hearing, issued an ex parte order suspending the license for one of the three day care centers based on an inspection by Umscheid on November 3, 1988. The order suspending the license was served on November 16, 1988, and resulted in the immediate closing of that day care center. The Lindenmans alleged Umscheid, for the past three years, had been "biased, prejudiced and vindictive" against Floyd Lindenman and also that Umscheid's report of his November 3, 1988, inspection consisted of many misrepresentations and gross exaggerations of fact.

Umscheid and another employee of KC-WCDH re-inspected the day care center on November 17, 1988. The center passed the re-inspection. The Lindenmans alleged that despite the results of the re-inspection, KDHE refused to lift the suspension unless the Lindenmans would: stipulate that the violations found in the first inspection existed, waive the right to appeal the final order, agree to another re-inspection, and concur that if any deficiencies reappeared KDHE would take action to oppose renewal of the license at the time of renewal. The Lindenmans stated that they refused to stipulate that the original inspection was accurate or to waive their right to appeal. They alleged that at all times, KC-WCDH knew of and ratified the acts of Umscheid and KDHE.

The Lindenmans' original petition alleged two counts of tortious conduct and one civil rights violation. Count I, the abuse of process charge, alleged the defendants misused the emergency proceedings provision (K.S.A. 77-536) of the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.*, and that the refusal to lift the suspension was a misuse of statutory procedures. Count II, the malicious prosecution charge, alleged that after KDHE learned the Lindenmans had refused to stipulate to the accuracy of the first inspection or waive the right to appeal, it began proceedings to revoke the day care center's license, that this action was malicious and lacking in probable cause, and that subsequent administrative proceedings resulted in a voluntary dis-

missal by KDHE in favor of the Lindenmans. Count III, the civil rights claim, alleged that both the abuse of process and the malicious prosecution acts of the defendants violated 42 U.S.C. § 1983 (1988) by denying the Lindenmans protection of their Fourteenth Amendment rights to due process.

Prior to trial, the district court granted relief to all of the defendants on either their motions to dismiss or for summary judgment. The district court first determined that the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, was the exclusive remedy for the Lindenmans. It found that all of the Lindenmans' claims against the defendants were barred because they had failed to file their petition within 30 days after the final agency action. The district court then ruled that if the KJRA was not the exclusive remedy for the Lindenmans, all claims against the various defendants were dismissed because (1) KC-WCDH lacked capacity to be sued; (2) Newkirk and his successor in office had not been served; (3) K.S.A. 1993 Supp. 60-513, the applicable statute of limitations, barred the claims against all defendants for abuse of process (Count I) and the civil rights claim (Count III); and (4) KDHE was not liable under Count III because it was not a person within the context of 42 U.S.C. § 1983.

The Lindenmans appealed. Defendants City, KDHE, and Grant cross-appealed the failure of the court to grant their motion for summary judgment on other grounds, arguing that the uncontroverted facts did not support claims of either abuse of process or malicious prosecution and that they were immune from liability under the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.* The appellee County adopted by reference the statement of facts, the arguments, and the authorities cited in the other appellees' briefs. No further reference will be made to argument made on behalf of the County, and any references in this opinion to an argument by any appellee should be read to include the County. To simplify the analysis, many of the issues are combined.

We begin by noting that when a trial court has granted a motion to dismiss, our scope of review is as follows:

" 'When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer.' Syl. ¶ 1.

'Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.' Syl. ¶ 2.

'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.' Syl. ¶ 3." *Bruggeman v. Schimke*, 239 Kan. 245, 247, 718 P.2d 635 (1986) (quoting *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 620 P.2d 837 [1980]).

The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. The party opposing summary judgment, however, has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. If factual issues do exist, they must be material to the case to preclude summary judgment. *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." K.S.A. 1993 Supp. 60-256(c). To defeat a properly supported motion for summary judgment, the nonmovant must come forward with "specific facts showing that there is a genuine issue for trial." *Mark Twain Kansas City*

*Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992).

## IS THE KJRA THE EXCLUSIVE REMEDY?

The district court's ruling that the KJRA provided the exclusive remedy for plaintiffs' action was based on *Kansas Sunset Assocs. v. Kansas Dept. of Health & Environment*, 16 Kan. App. 2d 1, 818 P.2d 797 (1991), and the district court's reading of the KJRA. In *Kansas Sunset*, KDHE had issued a permit for wastewater disposal to Sunset, the operator of a mobile home park. Later, KDHE informed Sunset its permit was being revoked and that Sunset was required to connect to a sewer system. Sunset filed suit for declaratory relief in the district court. KDHE moved to dismiss, arguing that the KAPA was the exclusive means of judicial review of its action and that Sunset should have sought relief in accordance with the KJRA. The district court dismissed Sunset's action. Sunset appealed. The Court of Appeals noted Sunset was seeking to define the scope of authority of KDHE. It held that the KJRA is the exclusive means of judicial review of actions of KDHE. It found that the plaintiff had failed to file a petition for review within 30 days of the agency action as required by the KJRA and affirmed the district court's dismissal of the injunction.

The Lindenmans contend that *Kansas Sunset* is not applicable to this action because they had prevailed in the administrative proceedings and had no right to appeal to the district court under the KJRA. They also assert that a practical problem occurs if the KJRA is the exclusive remedy for a tort action in this type of case because their malicious prosecution claim requires termination of the prosecution, by the agency, in their favor. Their cause of action for malicious prosecution could not arise until time for the agency's appeal under the KJRA had expired. They also assert that if the KJRA is the exclusive remedy for torts committed by the administrative agency, serious difficulties regarding their right to a jury trial arise.

KDHE responds that this court need not address whether the KJRA is the exclusive remedy for all torts alleged to be committed by an administrative agency, but need decide only whether the KJRA is the exclusive remedy for resolving claims of abuse of

process and malicious prosecution. KDHE first asserts that tort claims arising out of agency actions could be determined by the district court under K.S.A. 77-617(a), which allows a district court to address issues for which the administrative agency did not have jurisdiction to grant an adequate remedy. KDHE then argues the KJRA does not specifically preclude a jury trial.

We note the KJRA allows the district court to award damages to the extent expressly authorized by law (K.S.A. 77-622[a]) as well as any other appropriate relief, whether mandatory, injunctive, or declaratory; preliminary or final; temporary or permanent; equitable or legal. In granting relief, the court may also order agency action as required by law, order agency exercise of discretion required by law, set aside or modify agency action, enjoin or stay the effectiveness of agency action, remand the matter for further proceedings, render a declaratory judgment or take any other action that is authorized and appropriate. K.S.A. 77-622(b). The court may also grant necessary ancillary relief to redress the effects of official action wrongfully taken or withheld, but the court may award attorney fees or witness fees only to the extent expressly authorized by other law. K.S.A. 77-622(c).

The Lindenmans argue that tort actions against the agency cannot be addressed under the KJRA. For support they cite *Slifer v. Public Employee Relations Bd.*, 737 F. Supp. 1149 (D. Kan. 1990). In *Slifer,*the Kansas Association of Public Employees (KAPE) sought a declaratory judgment in federal court as to the constitutionality of the Public Employer-Employee Relations Act, K.S.A. 75-4321 *et seq.* The Public Employee Relations Board (PERB) argued KAPE's only avenue of redress was to seek review in state court under the KJRA. The federal judge disagreed and found that KAPE was not seeking review of an agency action but instead was seeking declaratory and injunctive relief, of which the federal district court had subject matter jurisdiction. PERB's motion to dismiss was denied. 737 F. Supp. at 1150. We find *Slifer* is not applicable because KAPE filed a declaratory judgment action to determine the constitutionality of a state statute allowing the agency to act and was not challenging the agency's action.

The Lindenmans also assert that *Parker v. Kansas Neurological Institute*, 13 Kan. App. 2d 685, 778 P.2d 390, *rev. denied* 245

Kan. 785 (1989), supports their claim that the district court has jurisdiction of the action. In *Parker*, plaintiff filed concurrent Civil Service Board (Board) and Kansas Commission on Civil Rights (KCCR) agency actions for review of her termination from employment with Kansas Neurological Institute (KNI). The Board denied her claim. She petitioned for judicial review of the Board's action, and lost on appeal. She also lost the KCCR action and did not appeal that decision. Parker subsequently filed a civil action in the district court seeking actual and punitive damages for the alleged discriminatory discharge. The district court granted summary judgment to KNI. Parker appealed to the Court of Appeals, which noted that the trial court had applied res judicata, or claim preclusion, and that res judicata foreclosed the litigation of matters that could have or should have been advanced in an earlier action, citing *In re Estate of Reed*, 236 Kan. 514, 516, 693 P.2d 1156 (1985). The Court of Appeals observed that res judicata precludes a second administrative proceeding when the first administrative proceeding provides the procedural protections similar to a court proceeding when an agency is acting in a judicial capacity.

The Court of Appeals determined Parker had a right to litigate a claimed discriminatory discharge after her administrative remedies have been exhausted, citing *Neunzig v. Seaman U.S.D. No. 345*, 239 Kan. 654, 658-59, 722 P.2d 569 (1986). The Court of Appeals reversed the district court, asserting that until such time as the legislature specifically states that an administrative action is the exclusive remedy for a discrimination claim, a negative finding by the Board or a finding of no probable cause by the KCCR does not preclude a subsequent action in the district court for discriminatory discharge. 13 Kan. App. 2d at 690.

The KJRA is modeled after Article 5 of the 1981 version of the Model State Administrative Procedure Act. Ryan, *The New Kansas Administrative Procedure and Judicial Review Acts*, 54 J.K.B.A. 53, 54 (1985). The legislature, however, did not adopt the Model Act. The section of the Model Act that corresponds to K.S.A. 77-606 is § 5-101, which states: "This Act establishes the exclusive means of judicial review of agency action." Section

5-101 continues with the following language not found in 77-606: "(1) The provisions of this Act for judicial review do not apply to litigation in which the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim." 15 U.L.A. 110 (1990). If that language had been included in the KJRA, it is clear the KJRA would not have been the exclusive remedy in this matter.

The KJRA applies to "all agencies and all proceedings for judicial review and civil enforcement of agency actions not specifically exempted by statute from the provisions of this act." K.S.A. 77-603(a). Agencies are defined as those that are "a state agency." K.S.A. 77-602(a). In accordance with K.S.A. 77-603, the KJRA establishes the exclusive means of judicial review of agency action. K.S.A. 77-606. Agency action is defined as "(1) The whole or a part of a rule and regulation or an order; (2) the failure to issue a rule and regulation or an order; or (3) an agency's performance of, or failure to perform, any other duty, function or activity, discretionary or otherwise." K.S.A. 77-602(b). The wrongful acts alleged by the plaintiffs are not licensing and inspection duties of KDHE, they are claims for damages for wrongful acts committed by the agency. Judicial review is not defined in the KJRA. Black's Law Dictionary 849 (6th ed. 1990) defines judicial review as the "[p]ower of courts to review decisions of another department or level of government" and as a "[f]orm of appeal from an administrative body to the courts for review of either the findings of fact, or of law, or of both."

We conclude that the KJRA applies to all proceedings for judicial review of agency proceedings and civil enforcement of agency actions. Here, the Lindenmans are not seeking a review by the courts of KDHE's findings of fact, conclusions of law, or decision. They filed a combined tort and civil rights claim against KDHE and other defendants. When K.S.A. 77-603 and the definition of judicial review are considered, it is clear that the district court erred in finding the KJRA was the exclusive remedy for the Lindenmans' tort claim against the agency. Because the KJRA does not apply to civil tort actions against an administrative

agency, the grounds for dismissal and summary judgment stated by the district court must now be reviewed.

## ARE PLAINTIFFS' CLAIMS TIME BARRED?

In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted the action to a successful conclusion. *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 698, 829 P.2d 578 (1992).

The Lindenmans' original petition was filed on March 11, 1991. To resolve the statute of limitations issue, we must determine (1) the applicable statute of limitations for each claim, (2) when the time to maintain each action accrued, and (3) whether the period of limitations was tolled at any time. The procedural timelines for the abuse of process and the malicious prosecution claims are set out and discussed separately.

### Abuse of Process

K.S.A. 1993 Supp. 60-513(a)(4) sets a two-year statute of limitations for an action for injury not arising under contract or not otherwise provided for. This would apply to an abuse of process claim. The underlying theory of the plaintiffs' abuse of process claim is KDHE's use of the emergency suspension procedure to suspend the license. A state agency may use emergency proceedings in a situation involving an immediate danger to the public health, safety, or welfare and requiring immediate state action. K.S.A. 77-536(a)(1). It may take only such action necessary to prevent the immediate danger or to remedy the situation. K.S.A. 77-536(b). After issuing an order, the state agency shall proceed as quickly as feasible to complete any proceeding required if the matter did not justify the use of emergency proceeding. K.S.A. 77-536(e).

The events that gave rise to the abuse of process claim are:

| | |
|---|---|
| November 3, 1988 | Inspection |
| November 16, 1988 | KDHE serves ex parte emergency suspension of license order—day care center closed |

| | |
|---|---|
| November 17, 1988 | Re-inspection notes deficiencies corrected; however, KDHE refuses to lift suspension unless conditions agreed to |
| November 30, 1988 | Petition for review of ex parte order filed |
| December 8, 1988 | Petition seeking injunctive relief filed |
| December 20, 1988 | District court issues injunction against KDHE preventing enforcement of ex parte emergency order suspending license (KDHE subsequently appealed the order granting the injunction to the Court of Appeals) |
| November 7, 1989 | KDHE voluntarily dismisses appeal just prior to oral argument |

There are two essential elements for the tort of abuse of process: the existence of an ulterior motive and an improper act in the regular prosecution of a proceeding. *Welch v. Shepherd*, 169 Kan. 363, 366, 219 P.2d 444 (1950). The statute of limitations began to run at the time both elements had occurred, at which time the Lindenmans would have been able to successfully prosecute the action. The Lindenmans' petition states Umscheid "had it in for them," *i.e.*, the ulterior motive. The improper act is the alleged misrepresentations of fact in Umscheid's report which led to the emergency suspension of the license.

Umscheid, KC-WCDH, and Newkirk argue the time to file the action commenced when the Lindenmans knew they had been damaged by the alleged wrongful conduct, which occurred December 20, 1988, the date that the district court enjoined KDHE from enforcing its order. The defendants point out that the plaintiffs' petition was filed in March 1991 and therefore the action was filed beyond the two-year limitation. The Lindenmans argue that the two-year statute of limitations to file the abuse of process claim was tolled while the defendants' appeal of the injunction against enforcement of the emergency order was pending in the Court of Appeals. We disagree that the statute of limitations was tolled on the Lindenmans' claims against Umscheid, KC-WCDH, or Newkirk. Those claims are based on Umscheid's act of in-

spection that occurred on November 3, 1988, and were not connected to KDHE's appeal of the order granting the injunction.

The Lindenmans assert that the limitation for filing the action shall be measured from the time KDHE's appeal was dismissed on November 7, 1989. If that date is correct, the petition filed in March 1991 would be timely. For support the Lindenmans cite *Pizel v. Zuspann*, 247 Kan. 54, 74, 795 P.2d 42 (1990), in which this court found that the time to file an action is tolled where a person is prevented from exercising his or her legal rights pending resolution of other legal proceedings.

*Pizel* involved a negligence claim of legal malpractice. Zuspann, an attorney, set up a trust for Charles Pizel. Subsequent representation was undertaken by Whalen, a law partner of Zuspann's. The trial court granted Zuspann's motion for summary judgment for Pizel's heirs' failure to state a claim because Whalen had replaced Zuspann as counsel. Plaintiffs, who had partially prevailed, appealed. Whalen cross-appealed, renewing his claim that the statute of limitations barred the Pizels' cause of action against him. The *Pizel* court noted the negligence of Zuspann occurred on May 23, 1962, when the trust, will, and deed that he had prepared were signed. Whalen's negligence occurred on June 10, 1975, when the first amendment to the trust and the second deed were signed, or on January 11, 1979, when the codicil was signed. None of these events, however, triggered the running of the statute of limitations because substantial injury had not occurred and, therefore, no cause of action arose. Similarly, a cause of action did not arise with Charles' death on April 24, 1979, because, at that time, appellants had not suffered any injury. The *Pizel* court held that the term "substantial injury" in what is now K.S.A. 1993 Supp. 60-513(b) means that the injured party must have sufficient ascertainable injury to justify an action for recovery of damages and, therefore, the occurrence of the negligence was not the appropriate time for accrual of the cause of action, citing *Roe v. Diefendorf*, 236 Kan. 218, 222, 689 P.2d 855 (1984).

The *Pizel* court continued:

"Under the damage theory, no injury occurred until the trust was declared invalid by the trial court on February 13, 1981. See [*Price, Administrator v.*

*Holmes,* 198 Kan. 100, 107, 422 P.2d 976 (1967)]. It was at that point in time that appellants suffered substantial injury. Absent tolling of the statute of limitations, the cause of action filed June 24, 1984, was not filed in a timely manner. However, as the trial court correctly held, based upon the rationale of *Price,* the statute of limitations was tolled until this court denied the petition for review on June 28, 1982. The plaintiffs were effectively precluded from bringing this action against Zuspann and Whalen until a final determination was made on the appeal. Until that final determination was made, the plaintiffs could have filed, but not prosecuted, the action to a successful conclusion. In the event the Court of Appeals or this court would have reversed the trial court, the plaintiffs would have had no cause of action against Zuspann or Whalen." 247 Kan. at 77.

The Lindenmans argue that if KDHE had prevailed on its appeal of the injunction, they could not have successfully prosecuted the action for abuse of process. The Lindenmans point out that until the appeal was dismissed, KDHE had the opportunity for the Court of Appeals to reverse the district court. A reversal of the district court's injunction would have precluded their abuse of process claim. The Lindenmans state that under these circumstances, like the plaintiffs in *Pizel,* the time to file their action was tolled until the appellate process concluded. They contend that the appellate process concluded when KDHE dismissed its appeal.

KDHE counters that any resolution of the appeal of the injunction would not have affected the merits of the abuse of process claim. KDHE contends that unlike the cause of action in *Pizel* involving a legal malpractice claim dependent on the outcome of the appeal construing the trust intent, the Lindenmans were not prevented from pursuing their abuse of process claim while the appeal of the injunction was pending. KDHE asserts the time was not tolled and the abuse of process claim is barred by the statute of limitations.

We disagree. Until the appeal of the district court's injunction was determined in favor of the Lindenmans, the statute of limitations was tolled. The Lindenmans were precluded from bringing the action against the defendant until a final determination was made. Until that final determination was made, the plaintiffs could have filed but could not have prosecuted their claim for abuse of process to a successful conclusion. We find that the cause

of action for abuse of process was tolled until KDHE dismissed its appeal on November 7, 1989. The petition was filed March 11, 1991, within the two year limitation of K.S.A. 1993 Supp. 60-513(a)(4).

### The Malicious Prosecution Claim

The elements required to establish a malicious prosecution claim set forth in *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438 (1980), are: (1) that defendant initiated, continued, or procured the proceeding of which complaint is made; (2) that defendant in doing so acted without probable cause; (3) that defendant must have acted with malice; (4) that the proceedings terminated in favor of plaintiff; and (5) that plaintiff sustained damages. See *Thompson v. General Finance Co., Inc.*, 205 Kan. 76, 91, 468 P.2d 269 (1970).

Probable cause for instituting a proceeding exists when there is reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent person in the belief that the party committed the act of which he or she is complaining. *Nelson*, 227 Kan. at 277.

The action giving rise to the malicious prosecution claim was KDHE's attempt to revoke the day care center's license after the Lindenmans refused to stipulate.

| | |
|---|---|
| December 5, 1988 | KDHE files notice it intends to seek revocation of the license |
| June 14, 1989 | Hearing officer issues order revoking license (the Lindenmans subsequently requested review of the hearing officer's findings by the Secretary of KDHE) |
| March 14, 1990 | Secretary dismisses action to revoke license |

Although the Lindenmans raise this issue, the record does not show the lower court relied on the statute of limitations in granting summary judgment on this count. The Lindenmans recognize this malicious prosecution claim is covered by a one year statute of limitations. K.S.A. 1993 Supp. 60-514(b). They also acknowledge that the action cannot be brought until the underlying action

is concluded and the time for appeal of the underlying suit has passed. *Hutchinson Travel Agency, Inc. v. McGregor,* 10 Kan. App. 2d 461, Syl. ¶ 2, 701 P.2d 977, *rev. denied* 238 Kan. 877 (1985). See *Nelson v. Miller,* 233 Kan. 122, 125, 660 P.2d 1361 (1983).

Umscheid, KC-WCDH, and Newkirk contend that the underlying action terminated on November 7, 1989, when the appeal of the injunction was dismissed. They assert that under the one-year statute of limitations, time to file the appeal ran in November of 1990. We agree. The action to revoke the license was a decision of KDHE taken subsequent to any act of the other defendants. Any claim against these defendants as to the malicious prosecution claim arose out of their acts that caused the issuance of the emergency order by KDHE and KDHE's ensuing appeal of the injunction against enforcing its emergency order.

KDHE concedes the statute of limitations does not bar this claim as it relates to the proceedings to revoke the license that ended on March 14, 1990. We agree. The proceeding to revoke the license ended on March 14, 1990, when KDHE dismissed its action to revoke the license. When the March 14, 1990, date is used, the petition was filed within one year of that date.

### Civil Rights Claim

When Congress created the cause of action codified in 42 U.S.C. § 1983 (1988), it did not provide a statute of limitations. *Miller v. City of Overland Park,* 231 Kan. 557, 559, 646 P.2d 1114 (1982). The applicable statute of limitations is found in the state law cause of action that most closely compares to the facts supporting the civil rights claim. 231 Kan. at 560-63.

As to Umscheid, the City, and the County, the district court ruled that any civil rights violation was connected to the last act of Umscheid as agent for the principals (the City and the County), which the judge found was in November 1988. The judge concluded that when the longest statute of limitations, the two years for the abuse of process cause of action, is applied, the petition was filed too late. The Lindenmans' one paragraph of argument states that because the civil rights claim is based on both the abuse of process and the malicious prosecution claims, the two-year stat-

ute of limitations applies. The malicious prosecution claim, however, was not decided in the district court on the statute of limitations grounds.

Before we address the statute of limitations issue, another ground for dismissing the civil rights claim must be addressed. There is currently a split of authority on whether a § 1983 claim may be based on malicious prosecution. See, *e.g., Albright v. Oliver*, 975 F.2d 343 (7th Cir. 1992), *aff'd* 510 U.S. ___, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994); and *Elbrader v. Blevins*, 757 F. Supp. 1174, 1178 (D. Kan. 1991). Umscheid, KC-WCDH, and Newkirk contend that the facts alleged for the abuse of process or malicious prosecution claims do not create a basis for a § 1983 action. We note that *Lindley v. Amoco Production Co.*, 639 F.2d 671, 673 (10th Cir. 1981), implies that under certain facts, an abuse of process claim could support a § 1983 action.

The facts in *Albright* involved a series of acts by a police officer that led to an arrest and subsequent release on bond of Albright; the charges were eventually dismissed for failure to state an offense under the law. After the court found that Albright's state tort claim based on false arrest was barred by the statute of limitations, he sought redress for the alleged malicious prosecution by filing a civil rights action. Judge Richard Posner found no § 1983 claim existed because Albright had failed to show there was either a deprivation of property or a curtailment of liberty that rose to the level of a due process violation. 975 F.2d at 346-47. Judge Posner noted and characterized the split of opinion on whether malicious prosecution supported a § 1983 claim as "embarrassing." 975 F.2d at 345.

The United States Supreme Court granted *certiorari* in *Albright*. A plurality opinion affirmed the Seventh Circuit Court of Appeals on grounds other than those relied on by the circuit court. *Albright v. Oliver*, 510 U.S. ___, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994). Chief Justice Rehnquist, joined by Justices O'Connor, Scalia, and Ginsburg, held that Albright's claim should have been raised under the Fourth Amendment and that "it is evident that substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'" 127 L. Ed. 2d at 122 n. 4.

Justice Kennedy, joined by Justice Thomas, concurred in affirming the Court of Appeals but based his reasoning on the conclusion the Due Process Clause of the United States Constitution does not include a standard to judge the initiation of a criminal prosecution and that because there was an adequate state remedy—the tort of malicious prosecution—Albright's § 1983 claim was barred under the doctrine of *Parratt v. Taylor*, 451 U.S. 527, 535-44, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981). Justice Kennedy opined that in the absence of a state remedy, there would arguably be a § 1983 claim for malicious prosecution as a violation of due process. 127 L. Ed. 2d 130-31. Justice Souter concurred separately and contended there may be "exceptional cases where some quantum of harm occurs" in facts equating to a malicious prosecution that would support a § 1983 claim for a violation of a substantive due process rights, but that those facts were not present in Albright's case. 127 L. Ed. 2d at 135. Justice Stevens, joined by Justice Blackmun, dissented, and disagreed that Albright's claim should have been asserted under the Fourth Amendment, finding that a due process claim based on malicious prosecution could support a § 1983 claim. 127 L. Ed. 2d at 142.

*Albright*, a plurality decision involving six separately filed opinions, none of which follow the rationale given by the Seventh Circuit, does not sufficiently resolve the "embarrassing" split of authority on the question of whether facts amounting to malicious prosecution can support a § 1983 claim for a violation of due process. Even if it did, *Albright* is distinguishable on the facts. Albright pled his case *solely* on substantive due process grounds under the Fourteenth Amendment. The Lindenmans asserted violations of both the First and Fourteenth Amendments. In addition, although not specified, the particular claims made under the § 1983 count could be read to include rights protected by constitutional provisions other than the Fourteenth Amendment.

We agree, however, with Justice Kennedy that *Parratt v. Taylor*, 451 U.S. 527, disposes of this issue. In that case the United States Supreme Court held that the Fourteenth Amendment protects only against deprivations without due process of law but does not protect against all deprivations of life, liberty, or property by

the State. Where states provide an adequate remedy, that remedy itself constitutes the due process required by the Fourteenth Amendment. 451 U.S. at 544. See *Allison v. Board of Johnson County Comm'rs*, 241 Kan. 266, 270, 737 P.2d 6 (1987).

We followed *Parratt* in *Alvarado v. City of Dodge City*, 238 Kan. 48, 708 P.2d 174 (1985), but distinguished it in *Allison. Alvarado* involved a false arrest by an off-duty police officer who suspected Alvarado of shoplifting. The *Alvarado* court recognized that where a deprivation of life, liberty, or property is "caused by a random and unauthorized state act for which prior process is impracticable or impossible," a post-deprivation remedy is the avenue for redress and a § 1983 claim does not lie. 238 Kan. at 53-54. *Allison,* on the other hand, involved an unconstitutional taking of property by a special assessment to pay for wastewater treatment facilities in Johnson County. There, rather than by some random and unauthorized act, the deprivation occurred under an established state procedure that did not contain proper procedural predeprivation due process safeguards.

The Lindenmans' pleadings allege the deprivation arose out of acts by a state actor based on prejudice, bias, and vindictiveness, which can only be characterized as random and unauthorized acts which no prior safeguards could practically or possibly completely prevent. The Lindenmans were afforded an adequate state remedy under the common-law tort claim of malicious prosecution and cannot now seek relief under § 1983. Although the abuse of process basis for the § 1983 claim is not barred by the statute of limitations, *Parratt* precludes a § 1983 claim based on abuse of process for the same reasons given for the malicious prosecution claim.

### Did KC-WCDH Have the Capacity to be Sued?

The district court dismissed KC-WCDH because the agency did not have the capacity to sue or be sued. Subordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued. *Hopkins v. State*, 237 Kan. 601, 606, 702 P.2d 311 (1985). The statutory authority need not be express, but can be implied. See *Board of Library Directors v. City of Ft. Scott*, 134 Kan. 586, 588, 7 P.2d

533 (1932). For example, the statutorily conferred power of a subordinate government agency to own and control property would have no meaning if the agency could not "vindicate" its rights in the property by suing in a court of law. 134 Kan. at 588. The Lindenmans note that if an agency has capacity to sue, it has the capacity to be sued, and vice versa. See *Breweries Co. v. Kansas City*, 96 Kan. 731, 733, 153 Pac. 523 (1915).

The Lindenmans contend that another Kansas City, Kansas agency, the Board of Public Utilities (BPU), has been found to have the capacity to sue and be sued. See *Seely v. Board of Public Utilities*, 143 Kan. 965, 57 P.2d 471 (1936); *Board of Public Utilities v. City of Kansas City*, 227 Kan. 194, 605 P.2d 151 (1980). In the latter case, the BPU sought a declaratory judgment that it was authorized by statute to determine and prescribe the manner in which new construction and revenue bonds were issued and sold. The BPU argued it was a completely autonomous agency, while the City contended the BPU's authority was limited to the day-to-day operations of the water and electrical systems of the city. This court observed the statutory authority given the BPU fell short of the powers granted to independent legal entities such as a port authority. 227 Kan. at 197. In particular, port authorities are granted express capacity to sue or be sued. K.S.A. 12-3402(a). We noted that the BPU is not given express statutory capacity to sue or be sued. Although that case did not directly address the capacity of the BPU to sue or be sued, it implies the power exists for the BPU to do so.

The Lindenmans also cite Att'y Gen. Op. No. 84-3 for the proposition that because the joint board of health has exclusive control over the expenditure of its monies, it has property, and a concomitant capacity to sue to vindicate its rights in that property, if necessary. KC-WCDH points out that Attorney General opinions are advisory in nature, and while persuasive, are not binding on courts. The support is further eroded by the opinion itself. The Attorney General notes that exclusive control by the joint board of its funds can be abrogated by agreement of the governing entities.

Umscheid, KC-WCDH, and Newkirk argue the BPU cases are distinguishable because the BPU by nature is proprietary, re-

quiring property ownership and control, while the joint board of health has no proprietary function. They also note the KC-WCDH joint board was dissolved effective January 1, 1992, and that the county commissioners now act as the local board of health. The City also claims that because the joint board was dissolved, the City has no liability. We agree with KC-WCDH's contention that despite the fact an agency has exclusive control of its funds, when that exclusive control may be removed by its governing entities one cannot always conclude that the agency has sufficient interest in property to require the capability to vindicate its rights in that property.

The Lindenmans also argue that when the KTCA is considered, that act's language indicates that a joint board of health has the capacity to be sued. The Lindenmans admit this argument was rejected in *Hopkins* but contend that because a city-county agency is involved, a different result may be obtained. We disagree with the Lindenmans' analysis of the KTCA. The KTCA states that "each governmental entity shall be liable for damages," or in other words, has the capacity to be sued, for negligent or wrongful acts of its employees. K.S.A. 75-6103(a). The KTCA defines a governmental entity as a state or municipality. K.S.A. 1993 Supp. 75-6102(c). Municipality is defined as a county or city and "any agency, authority, institution or other instrumentality thereof." K.S.A. 1993 Supp. 75-6102(b).

KC-WCDH's statutory authority is found at K.S.A. 65-205 *et seq.* and does not include express authority to sue or be sued. The KTCA definition of governmental entity and municipality, although it includes county and city agencies, does not show legislative intent to imbue all local government agencies with the capacity to sue or be sued. A more reasonable conclusion is that the KTCA does not confer upon an agency the capacity to sue or be sued. The district court did not err in ruling KC-WCDH lacked the capacity to sue or be sued.

The Lindenmans next note that K.S.A. 65-205 confers power on cities and counties with a population over 300,000 to create joint boards of health which have the powers possessed by any local board of health. They point out that K.S.A. 65-201 states

the county commissioners shall act as the county board of health for their counties, in the absence of any joint board of health. The Lindenmans conclude that because county commissioners act as the local boards of health, and as counties may be sued, K.S.A. 65-205 confers the power to sue or be sued on joint boards of health.

The fact that county commissioners can be sued and can act as local boards of health does not mean that by conferring joint boards with the power of local boards, the legislature intended joint boards to have the capacity to sue or be sued. The county commissioners' capacity to sue or be sued lies in their capacity as a governing body, not because they also act as the local boards of health. KC-WCHD had no statutory power to sue or be sued.

### Failure to Serve

An action is commenced at the time of the filing of a petition with the clerk of the court, if service of process is obtained within 90 days after the petition is filed. K.S.A. 1993 Supp. 60-203(a)(1). The filing of an entry of appearance has the same effect as service. K.S.A. 1993 Supp. 60-203(c). The district court dismissed Newkirk, the director of KC-WCDH when the action was filed, from the suit. Neither the nunc pro tunc order or the memorandum decision state the reason for dismissing Newkirk as a party. Newkirk's motion to dismiss alleged that he had not been served within the 90 days following the filing of the petition. In his answer Newkirk pled lack of personal jurisdiction as an affirmative defense. Before the journal entry was filed, plaintiffs obtained personal service on Newkirk and moved the district court to reconsider its dismissal. The district court refused to reconsider.

Now, on appeal, the Lindenmans contend Newkirk's motion for leave to answer constituted a general appearance equivalent to service of process, and because the journal entry dismissing the action against Newkirk had not been filed, it was not yet effective, and before the journal entry was filed and became effective, they obtained personal service on Newkirk. They argue the lack of service only affects the computation of the statute of limitations under 60-203. That statute provides a civil action is commenced when the petition is filed, and it sets the time period

to obtain service. If the service is not obtained within the time required, the action commences when service is made. The Lindenmans recognize, however, that the motion for extension of time to answer does not waive the defense of lack of personal jurisdiction. See *Haley v. Hershberger,* 207 Kan. 459, 465, 485 P.2d 1321 (1971).

In *Haley,* several actions were filed against Hershberger. In each action the plaintiffs requested that the sheriff personally serve the defendant. Service of process was made on the defendant's secretary. The return stated that the defendant had been personally served with process. Discovery proceedings were promptly instituted. The defendant filed an answer in each case. Among the defenses alleged by the defendant in the answer were the lack of personal jurisdiction and insufficiency of both process and service. After the time limitation had run, the defendant filed a motion to dismiss because of insufficiency of service. The district court granted the motion and dismissed the petitions. All plaintiffs obtained personal service on the defendant by alias summons. The defendant filed a motion to dismiss the actions because the statute of limitations had run. The district court dismissed the actions as time barred. The plaintiffs appealed.

The *Haley* court noted that K.S.A. 60-304(a) (Corrick) provided service could be obtained by delivering a copy of the summons and the petitions to the defendant personally or by leaving copies at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy to an agent authorized by appointment or law to receive service. The court concluded that leaving a copy of the petition and summons with the defendant's secretary was not substantial compliance to obtain personal service. The court held jurisdiction over the person of the defendant can be acquired only by issuance and service of process in the method prescribed by statute, or by voluntary appearance. The *Haley* court found the district court was correct in determining the statute of limitations had run against the claims of the plaintiffs before jurisdiction was obtained by personal service. 207 Kan. at 463-66. See *Bray v. Bayles,* 228 Kan. 481, 618 P.2d 807 (1980).

Newkirk was not served. The district court lacked personal jurisdiction. The district court did not err in dismissing him as a party. Because the service on Newkirk was improper, his successor in office could not be served or substituted for Newkirk as a party defendant. See K.S.A. 1993 Supp. 60-304(a).

*Sufficiency of the Petition and Summary Judgment*

The district court concluded Umscheid's liability depended on his ratifying the acts of the principal, KDHE. The judge noted that the Lindenmans had not cited any authority that an agent who ratifies the acts of the agent's principal is liable for the principal's tortious act. The district judge dismissed Umscheid as a party. The Lindenmans contend that under the standard of review for motions to dismiss, their petition states a theory supporting the claims against Umscheid and it was error for the judge to dismiss Umscheid as a party. We need not discuss this issue because we have previously determined that the statute of limitations precludes any claim against Umscheid for abuse of process.

Count II, the malicious prosecution count, is not barred by the statute of limitations. The district court found there was no evidence in the record that Umscheid had any connection with the action by KDHE to revoke the license, the basis for the malicious prosecution claim. The Lindenmans argue that Umscheid is liable because he "initiated" the malicious prosecution by the original act of the inspection; that is, without the inspection, there would never have been any action to revoke the license. The district court found that the action to revoke the license was "initiated" by KDHE, not Umscheid.

The Lindenmans quote the Restatement (Second) of Torts § 680 (1976) for the proposition that one is liable for malicious prosecution if he or she takes an "active part" in the initiation of the prosecution. The act of filing an inspection report, even if false, goes to an abuse of process claim but cannot be considered an "active part" of the subsequent prosecution by KDHE to revoke the license. The Lindenmans' citation undermines their argument and supports the trial court's determination. The trial court did not err in granting summary judgment to Umscheid on the malicious prosecution claim for this reason.

## The Civil Rights Claim

The trial court found KDHE could not be sued on the civil rights claim because it was not a person within the meaning of that term used in 42 U.S.C. § 1983 (1988). That federal statute states:

"Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to any party injured in an action at law, suit in equity, or other proper proceeding for redress." (Emphasis added.)

The Lindenmans argue that (1) the Eleventh Amendment is a jurisdictional bar to suing states in federal courts and (2) states are persons under 42 U.S.C. § 1983. The former statement is essentially correct but immaterial; the latter statement is incorrect.

The Lindenmans acknowledge that in *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989), the United States Supreme Court held that states are not subject to monetary liability under § 1983 because Congress did not intend the term person to apply to states when it promulgated the statute. 491 U.S. at 64. In *Will,* the United States Supreme Court stated:

"Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 472-473 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. That Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern* [*v. Jordan,* 440 U.S. 332 (1979)]. Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims, and that Congress did not provide such a federal forum for civil rights claims against States, we cannot accept petitioner's argument that Congress intended nevertheless to create a cause of action against States to be brought in state courts, which were precisely the courts Congress sought to allow civil rights claimants to avoid through § 1983." 491 U.S. at 66.

See *Sharp v. State,* 245 Kan. 749, 751, 783 P.2d 343 (1989), *cert. denied* 498 U.S. 822 (1990).

Under the facts of this case, where monetary relief is sought, a state and its agencies are not persons within the context of 42 U.S.C. § 1983.

### Does the Petition State a Claim?

KDHE also argues there are three reasons why the amended petition failed to state a claim. It first claims that the record fails to show an improper act or ulterior motive, the required elements of the tort of abuse of process. KDHE next asserts when the Lindenmans admitted to 19 of the 42 reported violations in the initial inspection, there was no probable cause to believe that it had abused the process. It concludes because it acted without malice to revoke the license, the KAPA mandates that an action be filed whenever an emergency order is issued. The Lindenmans respond that there are material questions of fact as to whether malicious prosecution occurred. The Lindenmans point out that an action to revoke a license is not mandated. They point out KDHE had the power to reissue a license for the day care center at any time, but refused to reissue the license. KDHE also contends that the final substantive element of the tort of malicious prosecution, termination of the proceedings in favor of the plaintiff, is missing. It asserts that the decision by the Secretary of KDHE to voluntarily dismiss the action to revoke the license was not a termination in favor of the Lindenmans. As previously determined, this claim is without merit.

The amended petition, when read in the light most favorable to the Lindenmans, states a claim for which relief could be granted. Because the trial court did not rule on the other grounds raised by KDHE, this court cannot determine those issues.

### Are the Plaintiffs' Claims Barred by the Kansas Tort Claims Act?

KDHE argues alternative grounds for affirming the trial court can be found in the KTCA. It argues it has immunity under three exceptions contained in K.S.A. 1993 Supp. 75-6104 of the KTCA:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . .

"(c) enforcement or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, regulation, ordinance or resolution;

. . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved; [and]

. . .

"(k) the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmental entity, to determine whether the property complies with or violates any law or regulation or contains a hazard to public health or safety."

KDHE argues that the underlying actions are the inspection made by Umscheid and the ensuing enforcement of the licensing regulations and that both of these actions are discretionary in nature.

The Lindenmans note that the KTCA makes liability the rule and immunity the exception. *C.J.W. v. State*, 253 Kan. 1, 13, 853 P.2d 4 (1993). K.S.A. 75-6103(a), subject to the limitations of the act, states that "each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment where the governmental entity, if a private person, would be liable under the laws of this state."

KDHE argues it has immunity under the enforcement or failure to enforce a law exception because this court has extended the ambit of this provision to licensing actions, citing *Collins v. Heavener Properties, Inc.*, 245 Kan. 623, 783 P.2d 883 (1989). The Lindenmans point out that this exception does not apply where there is " 'tortious conduct outside the scope of the [law being enforced], which would be negligence at common law.' " 245 Kan. at 632 (quoting *Barker v. Williams*, 244 Kan 318, 321, 767 P.2d 1284 [1989]). The Lindenmans claim that whether tortious conduct outside of the law being enforced occurred is a question of fact. *Lantz v. City of Lawrence*, 232 Kan. 492, 657 P.2d 539 (1983). In *Lantz*, the city, under the alleged scope of its weed abatement ordinances, entered onto Lantz's property and cut down 63 trees. The record lacked any indication of the size, age, or location of the trees, or the extent and nature of the dam-

ages caused. The factual question of whether the city's actions were within the purview of the weed abatement ordinance precluded summary judgment. 232 Kan. at 497.

The Lindenmans contend the alleged misrepresentations and exaggerations in the inspection report place the conduct outside the scope of the law being enforced and that KDHE's subsequent attempt to coerce the Lindenmans into stipulations and waivers is also outside the scope of the relevant laws and regulations. They argue that governmental entities have no discretion to violate a legal duty. For support they cite *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 757 P.2d 272 (1988).

In *Dougan,*plaintiffs brought an action to recover from the drainage district damages to cropland and loss of crops caused by flooding. Plaintiffs claimed that the flooding was the result of acts of defendant in constructing dikes and embankments and the widening of a drainage ditch which caused a diversion of natural waters. The defendant filed a motion to dismiss the petition on the basis that the Rossville Drainage District was immune from liability under the KTCA for any damages caused by the flooding of the Dougan property. The district court denied the motion but found that the issue of immunity was controlling and certified the question for an interlocutory appeal. The sole issue presented on the appeal was whether the discretionary function exception under K.S.A. 75-6104(d) (Ensley 1981) provided immunity to the drainage district for damages caused by the flooding of the plaintiffs' property. The *Dougan* court noted that it was clear that defendant Rossville Drainage District, if a private person, would have been liable under the law of Kansas for damages caused by flooding of land of a lower riparian landowner. This was also the holding in *Dougan v. Rossville Drainage District*, 2 Kan. App. 2d 125, Syl. ¶¶ 1, 2, and 3, 575 P.2d 1316, *rev. denied* 225 Kan. 843 (1978). This court noted that Kansas had adopted the rule of law that an upper proprietor of land may not gather and divert surface water from its natural course of flowage and thereby exceed the carrying capacity of the natural watercourse in which the surface water is deposited if that action causes damages of a serious and significant nature to a lower landowner. 243 Kan. at

319. The *Dougan* court observed that the discretionary function exception under 75-6104(d) of the KTCAis not applicable in those situations where a legal duty exists, either by case law or by statute, which the governmental agency is required to follow. It concluded that a governmental agency does not have a discretionary right to violate a legal duty and avoid liability. 243 Kan. 315, Syl. ¶ 3.

We agree that a governmental agency does not have a discretionary right to violate a legal duty and avoid liability. There is also a sufficient question of fact as to whether the conduct of KDHE was outside the scope of enforcement of the laws to preclude summary judgment.

KDHE next argues that the inspection of a facility for violations of regulations requires discretionary judgment calls by the inspector. The discretionary function exception applies when no mandatory duty or guidelines exist. *C.J.W.*, 253 Kan. at 14. The Lindenmans argue that the government does not have the discretion to maliciously prosecute someone.

KDHE cites *Siple v. City of Topeka*, 235 Kan. 167, 679 P.2d 190 (1984), to support its argument. The Siples' vehicle, parked in front of their home, was damaged during a storm when a limb from a tree fell on the car. Prior to the storm, after reports of other limbs falling from the tree were received, a city employee visually inspected the tree but nothing was done. An expert witness testified at trial that a visual inspection was insufficient under the circumstances. This court stated:

"Inspection laws are regulations designed to safeguard the public against fraud, injury and to promote the public health, safety and welfare. They provide for the examination or inspection of property by an authorized public official. The public official is to examine and determine whether the standards prescribed by the regulations are complied with."

. . .

"Such inspections are required by the State or a municipal corporation to determine whether property complies with or violates any law or regulation of the governmental entity or if the property constitutes a hazard to public health or safety. When an employee of the governmental entity is conducting an inspection within the scope of his or her employment, neither the governmental entity nor the employee is liable for the employee's failure to make an inspection or for making of an inadequate or negligent inspection." 235 Kan. at 170-72.

The Lindenmans are not complaining that the governmental entity or its employee failed to make an inspection or made an inadequate or negligent inspection. They are claiming that the inspection was done in a manner that violated a legal duty. The government has no power or grant of immunity under the KTCA to maliciously prosecute a citizen of the state.

The judgments of the district court regarding all defendants except KDHE are affirmed. The judgment in favor of KDHE on the civil rights violation claim is also affirmed. The granting of summary judgment in favor of KDHE on the abuse of process and malicious prosecution claims are reversed.