The Honorable Becky Hutchins State Representative, 50th District 700 Wyoming Holton, Kansas 66436
Dear Representative Hutchins:
You have asked our opinion on whether a multi-county joint board of health that contracts with the Kansas Department of Health and Environment (KDHE) to inspect day care facilities may assess fees for licensing and inspecting those facilities in addition to the fees assessed by KDHE.
You enclose a newsletter sent to daycare providers by the Northeast Kansas Multi-County Health Department. The newsletter states in part as follows:
 "Last December the NEK Multi-county Board of Directors passed some new county wide rules that need to be put into effect. They are as follows:
 "1. There will be a yearly fee of $50.00 payable to your local county health department for relicensure. This applies to Licensed and Registered daycares as well as group daycares. The fee for a childcare center or preschool will be $100.00.
. . . .
 "4. A visit fee will be imposed if you have a complaint filed against you and I find it to be a valid complaint. The fee will be $50.00.
 "5. A visit fee will also be charged if a complaint survey, a compliance survey or a yearly survey is done, violations are found and a second visit has to be made to your facility to verify that corrections have indeed been completed. The fee will be $25.00.
 "These new county regulations will become effective on September 1, 1999."
Joint boards of health are created pursuant to K.S.A. 65-205, as amended by L. 1999, Ch. 57, § 62, which states in pertinent part as follows:
 "Whenever it shall be determined that the public health and sanitation of any city or county may be best promoted by the creation of a joint board of health for any two or more cities, counties, or city and county the governing bodies of such municipalities may so declare by resolution and may, by agreement with each other, establish a joint board of health with the same powers, duties, and limitations as are now or hereafter may be provided by law for the creation and conduct of boards of health to act severally in such municipalities. Upon the creation of any such board of health all the jurisdiction, powers and duties now conferred by law upon any local, municipal or county board of health shall be withdrawn from such local, municipal or county board of health and conferred upon the joint board of health." (Emphasis added.)
It is a general principle of law that:
 "The legislature may delegate to governmental subdivisions or agencies the power to create administrative agencies, but, where the legislature has placed certain conditions and restrictions on the exercise of this power, these conditions and restrictions must be observed if the authority is to be exercised."[1]
In reviewing the authority of administrative agencies, Kansas Courts have repeatedly stated as follows:
 "The legal principle is well established that administrative agencies are creatures of statute and their power is dependent upon authorizing statutes; therefore, any exercise of authority claimed by the agency must come from within the statutes either expressly or by clear implication. There is no general or common-law power that can be exercised by an administrative agency."[2]
Because a multi-county joint board of health has the same powers, duties and limitations as a single county board of health, we turn to the statutes that set forth the powers of a county board of health to determine if it has the authority to set fees for licensure and inspection of child care facilities. K.S.A. 65-201
provides that the county commissioners shall act as the county board of health in their county and that they shall appoint a person to serve as the local health officer to advise them. A local health officer's duties are set forth in K.S.A. 65-202, and include making sanitary inspections of schools, distributing forms and keeping records required by the Secretary of KDHE, investigating certain infectious diseases and taking necessary measures to prevent the spread of communicable diseases, and "perform[ing] such other duties as this act, his or her county or joint board, or the secretary of health and environment may require." The municipalities contracting to establish a joint board of health are authorized to levy taxes for health and sanitation purposes."[3] County health departments are authorized by statute to collect fees for community nursing care services,[4] for services to persons using a mental health center,[5] and for tests and inoculations given to pupils in schools.[6] However, there is no statutory authority for a local board of health to assess fees for licensing or inspecting child care facilities.
While a board of county commissioners possesses broad powers to govern its county,[7] those powers do not transfer over when it sits as the county board of health. In Lindenman v.Umscheid,[8] the Kansas Supreme Court considered whether a joint board of health had the capacity to be sued. The Court noted that the statutory authority for the joint board, K.S.A.65-205, did not include express authority to sue or be sued. It rejected the argument that because a joint board of health has the powers possessed by a local board of health, which is the board of county commissioners, and because a county may be sued, K.S.A. 65-205 confers the power to sue or be sued on joint boards of health. In finding that the joint board had no statutory power to sue or be sued, the Court stated:
 "The fact that county commissioners can be sued and can act as local boards of health does not mean that by conferring joint boards with the power of local boards, the legislature intended joint boards to have the capacity to sue or be sued. The county commissioners' capacity to sue or be sued lies in their capacity as a governing body, not because they also act as the local boards of health."[9]
Thus, when a board of county commissioners sits as the local board of health, its powers are limited to those powers granted by the statutes that create the board of health.
Article 5 of chapter 65 of the Kansas Statutes Annotated regulates the licensing and inspection of child care facilities. K.S.A. 1998 Supp. 65-501 prohibits the operation of a child care facility without a license from the Secretary of KDHE. K.S.A. 1998 Supp.65-504 reserves to the Secretary of KDHE the power to grant a license to operate a child care facility. K. S.A. 1998 Supp. 65-505 sets the maximum amounts that may be assessed by KDHE for license fees and provides that the annual fee for a license shall be fixed by the secretary of KDHE by rules and regulations, and shall be paid to the Secretary of KDHE. The fees are set out in K.A.R. 28-4-92 which states in pertinent part:
 "(a) When application is made for a license or for the renewal of a license, the applicant shall send to the secretary of the Kansas department of health and environment the appropriate license fee specified below. . . .
 "(b) A full license shall be issued if the secretary finds that the applicant is in compliance with the requirements of K.S.A. 65-501 through 65-516 and amendments to it, and the rules and regulations promulgated pursuant to those statutes, and has made full payment of the license fee required by the provisions of K.S.A. 65-505 and amendments to it."
The Secretary has the duty to inspect, or cause to be inspected, every child care facility at least once every twelve months.[10] The Legislature has, by statute, charged the Secretary of KDHE with the responsibility for licensing daycare facilities and has authorized the Secretary to establish license fees. There are no statutes or regulations that allow a local board of health to assess fees for licensing or inspecting child care facilities.
We note that Attorney General Robert T. Stephan opined that because K.S.A. 65-205 does not apply uniformly to all counties, counties that voluntarily form a joint board of health may exercise their home rule powers to exempt themselves from its requirements and establish a joint board of health with different powers.[11] Thus, the board of county commissioners of each county in the Northeast Kansas Multi-County Board of Health could exercise its powers of home rule to charter out from the provisions of K.S.A. 65-205 that limit the joint board's power to the power granted single county boards. The counties could then establish a multi-county joint board of health with whatever powers the several counties agreed to, including the power to assess fees for licensure and visitation, as long as those powers are not proscribed by some uniform enactment. Absent such action by each of the boards of county commissioners in the Northeast Kansas Multi-County Board of Health, the Board of Health lacks the authority to impose such fees.
In conclusion, a multi-county joint board of health does not have the power to assess fees for licensing or inspecting child care facilities, unless the board of county commissioners of each of the counties comprising the joint board has exercised its home rule powers to exempt itself from the requirements of K.S.A.65-205, as amended by L. 1999, Ch. 57, § 62, and has agreed to establish a joint board with the power to assess such fees.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] 73 C.J.S. Public Administrative Law and Procedure, § 9 (1983).
[2] State ex rel. Secretary of Social and RehabilitationServices v. Guy, 23 Kan. App. 2d 943, 948 (1997), citing Pork Motel,Corp. v. Kansas Dept. of Health Environment, 234 Kan. 374, 378
(1983); Woods v. Midwest Conveyor Co., 231 Kan. 763, 770 (1982);State ex rel. Secretary of S.R.S. v. Fomby, 11 Kan. App. 2d 138,141 (1986).
[3] K.S.A. 65-208.
[4] K.S.A. 65-221.
[5] K.S.A. 65-211.
[6] K.S.A. 1998 Supp. 72-5210.
[7] K.S.A. 19-212.
[8] 255 Kan. 610 (1994).
[9] Lindenman, 255 Kan. at 631.
[10] K.S.A. 1998 Supp. 65-512.
[11] Attorney General Opinion No. 79-156.