Opinion
 

 EPSTEIN, J.
 

 Defendants were dismissed from a federal civil rights suit on the day of trial. They then brought this malicious prosecution action against the unsuccessful plaintiffs, claiming the civil rights action was brought in bad faith and without probable cause. We must decide whether the malicious prosecution action is preempted by the provisions of the federal Civil Rights Act. We conclude that it is not, and reverse the judgment.
 

 Factual and Procedural Summary
 

 Since this case reaches us following the sustaining of a demurrer without leave to amend, we accept as true the factual allegations of the complaint. (See
 
 Thompson
 
 v.
 
 County of Alameda
 
 (1980) 27 Cal.3d 741, 746 [167
 
 *33
 
 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) In November 1990, Anthony Jetton was injured by a police canine during his felony arrest by members of the Downey Police Department. Through his mother, as guardian ad litem, he filed a civil rights action under 42 United States Code section 1983 against the City of Downey, its police chief, the two police officers who physically arrested him, and four other police officers: appellants Roberto Del Rio, Michael L. Westray, Jeffrey Calhoun, and Michael Connely.
 

 In answer to Jetton’s interrogatories, appellants denied any participation in the arrest incident. At deposition, Jetton admitted that only two officers effected his arrest, corroborating the arresting officers’ position that they alone had subdued and arrested Jetton. Despite this information, Jetton and his attorneys continued to prosecute the civil rights action against appellants. When the civil rights action proceeded to trial on October 12, 1993, Jetton’s counsel admitted under questioning by the court that there was no evidence to support Jetton’s claims against appellants. The court dismissed Jetton’s action against appellants, with prejudice. The remainder of Jetton’s case was tried, and the jury returned a defense verdict after one hour of deliberation.
 

 Appellants then brought this action for malicious prosecution against Jetton and his attorneys in the civil rights action, Donald Cook and Robert Mann (collectively respondents). Respondents demurred, arguing that the trial court lacked jurisdiction because the cause of action for malicious prosecution was preempted by 42 United States Code section 1988
 
 [1]
 
 and rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.). The court sustained the demurrers without leave to amend, judgment was entered, and this timely appeal followed.
 

 Discussion
 

 The sole issue before this court is whether appellants’ complaint for malicious prosecution of a section 1983 civil rights claim is preempted by section 1988 or by rule 11 of the Federal Rules of Civil Procedure.
 

 The parties agree that there is no express preemption in this case, “In the absence of an express statement by Congress that state law is pre-empted, there are two other bases for finding pre-emption. First, when Congress intends that federal law occupy a given field, state law in that field is pre-empted. [Citation.] Second, even if Congress has not occupied the field, state law is nevertheless pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, [citation], or when the state law ‘stands as an obstacle to the
 
 *34
 
 accomplishment and execution of the full purposes and objectives of Congress,’ [Citations.]”
 
 (California
 
 v.
 
 ARC America Corporation
 
 (1989) 490 U.S. 93, 100-101 [109 S.Ct. 1661, 1665, 104 L.Ed.2d 86].)
 

 We start with the presumption that federal statutes do not supersede the exercise of historic police powers of the states “ ‘unless that was the clear and manifest purpose of Congress.’ [Citation.]”
 
 (Medtronic, Inc.
 
 v.
 
 Lohr
 
 (1996) 518 U.S. _, _ [116 S.Ct. 2240, 2250, 135 L.Ed.2d 700, 715-716].) “ ‘[T]he purpose of Congress is the ultimate touchstone’ in every preemption case.”
 
 (Ibid.)
 

 Respondents argue that by enacting section 1988 Congress intended to occupy the entire field of remedies available to a prevailing defendant in a civil rights action. That section provides: “In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.” The language of section 1988 makes no distinction between a prevailing plaintiff and a prevailing defendant for purposes of an award of attorney’s fees. Cases applying that section, however, hold that a defendant who prevails in a federal civil rights suit is entitled to an award of attorney’s fees only if the suit was frivolous or meritless.
 
 (Hughes
 
 v.
 
 Rowe
 
 (1980) 449 U.S. 5, 14 [101 S.Ct. 173, 178, 66 L.Ed.2d 163];
 
 Tarkowski
 
 v.
 
 County of Lake
 
 (7th Cir. 1985) 775 F.2d 173, 176; see discussion of this “dual standard” in
 
 Fogerty
 
 v.
 
 Fantasy, Inc.
 
 (1994) 510 U.S. 517, 522-525 [114 S.Ct. 1023, 1027-1029, 127 L.Ed.2d 455].) This is consistent with the statutory history.
 

 The Senate Report for section 1988 explained the purpose of this fee-shifting provision: “In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation’s fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.” (Sen.Rep. No. 94-1011, 2d Sess., p. 2 (1976).)
 

 The Senate Report expressed an awareness of the tension between the potential chilling effect on plaintiffs from allowing an award of attorney’s fees to a prevailing defendant, and the right of a defendant to recover fees when an action is brought frivolously. According to the report, parties seeking to enforce civil rights as “ ‘private attorneys general’ should not be deterred from bringing good faith actions to vindicate the fundamental rights
 
 *35
 
 here involved by the prospect of having to pay their opponent’s counsel fees should they lose. [Citation.] Such a party, if unsuccessful, could be assessed his opponent’s fee only where it is shown that his suit was clearly frivolous, vexatious, or brought for harassment purposes. [Citation.] This bill thus deters frivolous suits by authorizing an award of attorneys’ fees against a party shown to have litigated in ‘bad faith’ under the guise of attempting to enforce the Federal rights created by the statutes listed in S. 2278. Similar standards have been followed not only in the Civil Rights Act of 1964, but in other statutes providing for attorneys’ fees. E.g., the Water Pollution Control Act, [citation], and the Clean Air Act, [citation].’’ (Sen.Rep. No. 94-1011, 2d Sess., pp. 4-5 (1976).)
 

 What emerges is a dual purpose for the attorney’s fee provision of section 1988: (1) to encourage vigorous enforcement of good faith civil rights claims, and (2) to deter the bringing of civil rights actions which are “clearly frivolous, vexatious, or brought for harassment purposes.” (Sen.Rep. No. 94-1011, 2d Sess., pp. 4-5 (1976).) The importance of this second, deterrent purpose was explained in
 
 Hamilton
 
 v.
 
 Daley
 
 (7th Cir. 1985)
 
 777
 
 F.2d 1207, 1211: “[A] statute awarding fees only to prevailing plaintiffs, and not to prevailing defendants, while certainly within Congressional power, would provide incentives to bring suit without penalizing litigants who bring suits solely for harassment with no hope for success. [Citation.] Meritless lawsuits clog court dockets, delaying the resolution of meritorious suits and diverting judicial resources that could be devoted to worthwhile litigation. Courts exist to settle disputes, not to settle scores. Suits filed with no real hope of victory needlessly bring defendants through the costly and agonizing uncertainty of defending suit. When these defendants are public officials, their professional reputations are threatened, and they may be induced to re-examine their calling to public service. Congress recognized these dangers in providing fees not just to prevailing plaintiffs but to prevailing parties.” (Original italics.)
 

 The fact that Congress provided one form of relief to prevailing defendants does not, without more, support an inference that it intended to occupy the entire field of relief to prevailing defendants victimized by civil rights actions not brought in good faith. “Ordinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law . . . .”
 
 (California
 
 v.
 
 ARC America Corporation, supra,
 
 490 U.S. 93, 105 [109 S.Ct. 1661, 1667].) We find that particularly true in a case such as this one, where there is a much lower standard for a prevailing defendant’s entitlement to attorney’s fees under the federal law than for that defendant to prevail in a subsequent state action for malicious prosecution.
 

 
 *36
 
 Subjective bad faith is not required for an award of attorney’s fees to a prevailing defendant under section 1988
 
 [2]
 
 ; fees may properly be awarded when a plaintiff’s action is “meritless in the sense that it is groundless or without foundation.”
 
 (Hughes
 
 v.
 
 Rowe, supra,
 
 449 U.S. 5, 14 [101 S.Ct. 173, 178];
 
 Christiansburg Garment Co.
 
 v.
 
 EEOC, supra,
 
 434 U.S. 412, 421, [98 S.Ct. 694, 700].) In contrast, a successful action for malicious prosecution in California requires proof not only that the underlying action was brought without probable cause, but also that it was initiated or continued with malice.
 
 (Sheldon Appel Co.
 
 v.
 
 Albert & Oliker
 
 (1989) 47 Cal.3d 863, 874 [254 Cal.Rptr. 336, 765 P.2d 498].) “The ‘malice’ element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action ....’’
 
 (Ibid.)
 
 A provision for recovery of attorney’s fees where a civil rights action is brought without foundation does not demonstrate any legislative intent to preclude a greater measure of relief where the action is not only without foundation, but also is brought in bad faith.
 

 Section 1988 provides a very limited remedy—fees and costs—to a prevailing defendant. While an individual defendant maliciously sued for violation of civil rights may suffer damage to reputation or emotional distress (see
 
 City of Long Beach
 
 v.
 
 Bozek
 
 (1982) 31 Cal.3d 527, 538, fn. 9 [183 Cal.Rptr. 86, 645 P.2d 137]), section 1988 makes no provision for recovery for such injury. Nor is a remedy provided elsewhere in the federal law. “It has generally, and we think correctly, been assumed that there is no federal tort of malicious prosecution. [Citations.] There hardly seems a pressing need for such a tort. State tort law of malicious prosecution may reach malicious federal litigation, . . .”
 
 (Tarkowski
 
 v.
 
 County of Lake, supra,
 
 775 F.2d 173, 175.) Nothing in the limited relief available under section 1988 indicates a congressional intent to prevent a more seriously damaged defendant from pursuing a greater remedy under state tort law.
 

 The fact that a higher standard must be established to proceed with an action for malicious prosecution under state law than is necessary for recovery of attorney’s fees under section 1988 also defeats a claim of conflict preemption, State law is preempted to the extent that it actually conflicts with federal law, as when it is impossible for a private party to comply with both state and federal requirements, or when the state law imposes an obstacle to the accomplishment of the will of Congress.
 
 *37
 

 {English
 
 v.
 
 General Electric Company
 
 (1990) 496 U.S. 72, 79 [110 S.Ct. 2270, 2275, 110 L.Ed.2d 65].) No such obstacle exists in this case. Congress intended the fee-shifting provision in section 1988 to encourage plaintiffs to bring good faith civil rights actions, and to deter plaintiffs from bringing civil rights actions which lack foundation. A tort action for malicious prosecution against a plaintiff who brought a civil rights action without foundation,
 
 and
 
 with malice does not conflict with either of those purposes.
 

 Respondents also base their preemption argument on rule 11 of the Federal Rules of Civil Procedure, which provides for the imposition of “an appropriate sanction” against a person who signs a pleading, motion or other paper without the belief, formed after reasonable inquiry, that its contents are well grounded in fact. In
 
 Business Guides, Inc.
 
 v.
 
 Chromatic Communications Enterprises, Inc.
 
 (1991) 498 U.S. 533, 553 [111 S.Ct. 922, 934, 112 L.Ed.2d 1140], the Supreme Court rejected a claim that rule 11 created a federal common law tort of malicious prosecution. “The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses. . . . [W]e are confident that district courts will resist the temptation to use sanctions as substitutes for tort damages.” Nothing in rule 11 indicates an intent to occupy the entire field of groundless suits brought for malicious purpose, nor is there any conflict between rule 11 and a damages action for such malicious prosecution.
 

 Surprisingly, only a single reported case has been cited to us on the preemption issue in this case. We have not found another. That case,
 
 East-Bibb Twiggs Neighborhood
 
 v.
 
 Macon-Bibb Plan.
 
 (MLD.Ga. 1987) 674 F.Supp. 1475, 1476, involved a civil rights action under section 1983, and a counterclaim by the defendant for abusive litigation.
 
 [3]
 
 The federal district court in Georgia held the compulsory counterclaim was preempted by section 1988 and rule 11 of the Federal Rules of Civil Procedure: “Congress, in passing [section 1988], has already spoken on the issue of what damages a defendant may recover for having to defend against a frivolous action. . . . Furthermore, Congress has specifically addressed the problem of abusive litigation when it promulgated Rule 11 of the Federal Rules of Civil Procedure. By explicitly delineating what rights a defendant has when an abusive claim based upon federal law is brought against that party, Congress has simply pre-empted this entire area of the law . . . .” (674 F.Supp. at pp. 1476-1477.)
 

 We respectfully disagree. The fact that Congress has provided certain remedies to a party forced to defend a meritless civil rights claim, or who is
 
 *38
 
 subjected to baseless court filings, does not demonstrate an intent to preclude a subsequent state tort action where the claim was not only frivolous or entirely without merit, but also was motivated by actual malice against the defendant. The risk of a “chilling effect” is limited to those plaintiffs whose intent in filing a civil rights claim is malicious. There is no basis in history or logic to conclude that Congress intended to encourage such claims.
 

 We conclude that appellants have pleaded a cause of action for malicious prosecution. The demurrers against their complaint should have been overruled.
 

 Disposition
 

 The judgment (order of dismissal) is reversed. Appellants are to have their costs on appeal.
 

 Vogel (C. S.), P. J., and Aranda, J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied June 12, 1997, and respondents’ petition for review by the Supreme Court was denied August 13, 1997.
 

 [1]
 

 All statutory references are to 42 United States Code unless otherwise noted.
 

 [2]
 

 The Senate Report for section 1988 refers to deterring frivolous suits brought “in ‘bad faith’ ” (Sen.Rep. No. 94-1011, 2d Sess., pp. 4-5 (1976)), but cases interpreting section 1988 explicitly hold that bad faith is not required for an award of attorney’s fees to a prevailing defendant under section 1988. (See
 
 Hughes
 
 v.
 
 Rowe, supra,
 
 449 U.S. 5, 14 [101 S.Ct. 173, 178], relying on
 
 Christiansburg Garment Co.
 
 v.
 
 EEOC
 
 (1978) 434 U.S. 412, 421 [98 S.Ct. 694, 700, 54 L.Ed.2d 648].)
 

 [3]
 

 Under Georgia law in effect at that time, a claim for abusive litigation had to be brought as a part of the litigation which created the claim.
 
 (Yost
 
 v.
 
 Torok
 
 (1986) 256 Ga. 92 [344 S.E.2d 414, 417-418].)
 

 *
 

 Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.