No. 80,527

MCSHARES, INC., *Appellant*, v. DONALD D. BARRY, *et al.*, *Appellees.*
(970 P.2d 1005)

Opinion filed December 18, 1998.

*Dianne M. Hansen* and *Thomas M. Bradshaw*, of Armstrong, Teasdale, Schlafly & Davis, of Kansas City, Missouri, argued the cause, and *J. Stan Sexton*, of Hampton Royce Engleman & Nelson, of Salina, was with them on the briefs for appellant.

*Arlen L. Tanner*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Norman I. Reichel*, of the same firm, and *Norman R. Kelly*, of Norton, Wasserman, Jones & Kelly, of Salina, were with him on the brief for appellees Donald D. Barry and Anthony S. Barry.

*Stephen J. Torline*, of Blackwell Sanders Matheny Weary & Lombardi, LLP, of Overland Park, argued the cause, and *James D. Griffin*, of the same firm, was with him on the brief for appellee David H. Weinstein.

*Catherine M. Walberg*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, argued the cause, and *Wayne T. Stratton*, of the same firm, was with her on the brief for appellees Barrack, Rodos & Bacine, a General Partnership, P.C.; Leonard Barrack, Leonard Barrack, P.C.; Gerald J. Rodos, P.C.; Daniel E. Bacine, P.C.; and Anthony J. Bolognese.

*Richard T. Foster* and *Robert G. Martin*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, were on the brief for appellees Kohn, Swift & Graf, P.C.; Joseph C. Kohn, Esq.; and Steven A. Ashen, Esq.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal from the district court's dismissal of the petition of McShares, Inc., (McShares) for damages for alleged malicious prosecution and abuse of process. The defendants/appellees are individual attorneys and law firms who represented claimants against McShares in a prior federal court class action under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* (1994), which concluded with a jury verdict in favor of McShares. The appeal was transferred from the Court of Appeals to this court.

The district court dismissed the petition in the present case on the ground that the subject matter is preempted by operation of federal law and procedure. The sole issue in this appeal is whether the state court claims of malicious prosecution and abuse of process arising out of the Sherman Antitrust Act litigation are preempted by federal law.

Material facts are not in dispute. The district court's journal entry of judgment recites that defendants had filed various motions requesting judgment on the pleadings, dismissal of the action, and summary judgment. The district court had requested the parties to file proposed findings of fact and conclusions of law, and the journal entry of judgment contains findings of fact and conclusions of law. It does not appear that all the district court's findings of fact are from the pleadings. For this reason, the trial court's action will be deemed to be an entry of summary judgment in favor of defendants/appellees and against McShares. K.S.A. 60-212(b) and (c).

There is nothing in the record, docketing statement, or briefs to indicate that any challenges have been or are being raised to the district court's findings of fact. The district court's determinations of fact, therefore, are final and conclusive. *Justice v. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d 102, 109, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992).

The district court's findings of fact are as follows:

"1. On or about November 27, 1996, Plaintiff filed a Petition for damages against the Defendants herein alleging claims for malicious prosecution and abuse of process.

"2. Plaintiff alleges that the Defendants acted without probable cause and with malice, and improperly and for an ulterior purpose and motive in filing against

and continued prosecution of Plaintiff in *Albert City Elevator Co. v. Pestcon Sys., Inc., et al.*, Case No 93-CV-2496, in the United States District Court for the District of Kansas.

"3. The Defendants are individual attorneys and law firms who represented the claimants against the Plaintiffs herein in the prior Federal Court action.

"4. The prior Federal Court action against Plaintiff was premised solely upon alleged civil violations of Federal anti-trust laws, specifically the Sherman Anti-Trust Act, 15 U.S.C. § 1, *et seq.*

"5. Without detailing the somewhat convoluted procedural history of the prior Federal Court case, the action consisted of several individual class action lawsuits against various parties filed pursuant to the Federal Rules of Civil Procedure, which cases were eventually consolidated and tried under procedures set forth in the Federal Court Manual for Management of Complex Litigation.

"6. After extensive pre-trial proceedings, the Federal case was tried to a jury which returned, inter alia, a verdict in favor of Plaintiff herein against the claims of the parties represented by the Defendants herein.

"7. No motion or other action was filed by the Plaintiff herein in the prior Federal case suggesting that any pleading filed by any of the Defendants herein was frivolous, unwarranted or filed for any improper purpose."

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movants are entitled to judgment as a matter of law. K.S.A. 1997 Supp. 60-256(c). On appeal of a case like the present one where there is no dispute as to the material issues, this court's review of the district court's conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

The district court reasoned that because federal courts have exclusive jurisdiction of Sherman Act antitrust actions, a state court is preempted from entertaining abusive litigation claims arising from an antitrust action. In its conclusions of law, the district court stated that adjudication of McShares' malicious prosecution and abuse of process claims would require resolution of complex issues under the Sherman Act, would create potential for impermissible conflict in interpretation and application of a complex federal act, might obstruct accomplishment and execution of Congress' purposes in enacting the Act, and might have a chilling effect on persons exercising their rights under the Act because a subsequent state court action effectively would constitute a collateral attack on the federal court proceeding. The district court cited *East-Bibb*

*Twiggs Neighborhood v. Macon-Bibb Plan.*, 674 F. Supp. 1475 (M.D. Ga. 1987), and *Edmonds v. Lawrence Nat'l Bank & Tr. Co.*, 16 Kan. App. 2d 331, 823 P.2d 219 (1991), for the principle that state court remedies are preempted by the combined operation of federal law and procedure. Citing *Edmonds*, the district court declared: "Kansas clearly recognizes that where Congress has preempted a particular field by an award of exclusive jurisdiction, Federal Rule of Civil Procedure No. 11 preempts any state cause of action for abuse of process or malicious prosecution arising out of cases so exclusively reserved." The district court distinguished *Business Guides v. Chromatic Comm.*, 498 U.S. 533, 112 L. Ed. 2d 1140, 111 S. Ct. 922 (1991), *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993), and *Cohen v. Lupo*, 927 F.2d 363 (8th Cir. 1991).

On appeal, McShares contends that the district court's reliance on *Edmonds* and *East-Bibb Twiggs* was in error. McShares would distinguish *Edmonds* and the cases cited therein on the ground that the underlying federal action was in bankruptcy. McShares would distinguish *East-Bibb Twiggs* on the ground that the underlying federal action was a civil rights action. Bankruptcy has the double distinction of being a field that is completely occupied by federal law and of containing its own remedy for frivolous or malicious proceedings. Civil rights is a field in which federal and state law operate concurrently, but federal civil rights legislation, unlike the Sherman Act, includes a remedy for frivolous or malicious proceedings.

In *Edmonds*, the district court entered summary judgment in favor of the defendant bank, holding that Fed. R. Civ. Proc. 11 and Fed. R. Bankr. Proc. 9011 preempted any state action for malicious prosecution or abuse of process that arose from the bank's filing of a complaint to revoke the Edmondses' discharge granted by the U.S. Bankruptcy Court. 16 Kan. App. 2d at 331-32. The Court of Appeals affirmed.

The Court of Appeals considered but passed on *East-Bibb Twiggs* and *Cohen*, which had been cited by the Edmondses for the proposition that Rule 11 is a procedural tool that cannot alter or eliminate substantive state law. The court settled on *Gonzales*

*v. Parks*, 830 F.2d 1033 (9th Cir. 1987), as a more persuasive federal case. Barbara Parks held a deed of trust, which she sought to foreclose, on the Gonzaleses' real property. The sale was halted when the Gonzaleses filed a petition in bankruptcy. In California state court, Parks filed an action claiming that the bankruptcy filing constituted an abuse of process. The Gonzaleses filed an adversary proceeding in the bankruptcy court against Parks and her counsel, Jerome Parks, seeking relief from the state court action. The bankruptcy court granted summary judgment in favor of the Gonzaleses, and that action was affirmed by the federal district court and the Court of Appeals. 830 F.2d at 1034-35. Our Court of Appeals quoted the following passage from the opinion of the federal Court of Appeals:

" 'Implicit in the Parkses' appeal is the notion that state courts have subject matter jurisdiction to hear a claim that the filing of a bankruptcy petition constitutes an abuse of process. We disagree with that assumption. Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating. [Citation omitted.] . . . The ability collaterally to attack bankruptcy petitions in state courts would also threaten the uniformity of federal bankruptcy law . . . .' 830 F.2d at 1035." 16 Kan. App. 2d at 333-34.

Noting that *Gonzales* involved filing of a bankruptcy petition and the Edmondses were complaining of a complaint to revoke their discharge in bankruptcy, the Court of Appeals concluded that the same principles governed both situations. The Court of Appeals also examined a California state court case, *Idell v. Goodman*, 224 Cal. App. 3d 262, 273 Cal. Rptr. 605 (1990). From that case, the Court of Appeals quoted the following: "The *Idell* court stated that 'the reasoning of *Gonzales* bears repeating. The existence of federal sanctions for the filing of a frivolous and malicious bankruptcy pleading must be read as an implicit rejection of state court remedies.' 224 Cal. App. 3d at 271." 16 Kan. App. 2d at 334. Thus persuaded by the reasoning of *Gonzales* and *Idell*, the Court of

Appeals concluded that "state court remedies are not available for seeking redress for allegations of frivolous and malicious bankruptcy actions." 16 Kan. App. 2d at 334.

In 1987, at the time it considered *Gonzales,* the Ninth Circuit court was "able to find only one other case where a state court considered a claim that filing a bankruptcy petition constituted an abuse of process." 830 F.2d at 1035 n.5. The question seems to have arisen several times in the meantime. Since *Edmonds* was decided in 1991, it has been cited with approval by courts in four federal circuits. All are bankruptcy cases.

McShares argues that the principles upon which the Court of Appeals based its decision in *Edmonds* do not extend to nonbankruptcy areas of law. Bankruptcy law is unique to the federal court system, but the states share parallel authority with the federal government in other fields, such as civil rights, antitrust, and securities regulation. In addition, federal bankruptcy law includes sanctions tailored for frivolous and malicious bankruptcy filings. Fed. R. Bankr. Proc. 9011. According to McShares, because federal legislation neither completely occupies the field of antitrust nor provides sanctions specific to it, *Edmonds* is not controlling and remedies for abusive federal antitrust litigation should not be restricted to federal courts.

Like *Edmonds, East-Bibb Twiggs* restricts remedies for abusive federal litigation to those available under federal law. In the federal civil rights action under 42 U.S.C. § 1983 (1994), a defendant filed a counterclaim for abusive litigation based on Georgia state law. The federal district court granted plaintiff's motion to dismiss the counterclaim, noting that Congress provided a remedy in 42 U.S.C. § 1988 (1994) for one who has to defend against a frivolous § 1983 action. It further noted that Rule 11 specifically addresses the problem of abusive litigation. "By explicitly delineating what rights a defendant has when an abusive claim based upon federal law is brought against that party, Congress has simply pre-empted this entire area of the law, and accordingly, [Georgia state law] has no application to this case." 674 F. Supp. at 1476-77. The district court stated:

"Congress' unwillingness to provide specifically for special damages other than litigation costs, damages for mental distress, and nominal damages in any of the statutes designed to deter abusive litigation, indicates to this court that Congress did not believe that such damages should be recoverable in these federal causes of action." 674 F. Supp. at 1477.

McShares would minimize the persuasive force of *East-Bibb Twiggs* in this case. First, McShares asserts that it "is the **only** case outside of the bankruptcy area which has ever held that federal law and federal procedure preempt independent state law claims for abusive litigation which arises from actions based on federal law." Defendants have not contradicted McShares' assertion.

We have found one other nonbankruptcy case supporting pre-emption, and it, like *East-Bibb Twiggs*, is from Georgia. *Great Western Bank v. Southeastern Bank*, 234 Ga. App. 420, 507 S.E.2d 191 (1998). It was decided after the parties submitted their briefs in the present case. In a prior federal court action, Great Western Bank charged an automobile dealership, its owners, and South-eastern Bank with violations of the state and federal racketeering statutes (RICO). Southeastern Bank's motion to dismiss it from the federal action was granted, and it brought the state court action against Great Western Bank and its attorneys under a Georgia abu-sive litigation statute. The state trial court denied Great Western Bank's motion to dismiss, which argued the principle that Rule 11 provided the exclusive remedy. On interlocutory appeal, the Court of Appeals of Georgia reversed. It held that the state court action could not be maintained because Southeastern Bank had the rem-edy of Rule 11 sanctions available in the underlying federal litiga-tion.

The Georgia appellate court's rationale is not very convincing. The decision was based on its perception of the intent of the state legislature in enacting the abusive litigation measure and the intent of Congress with regard to Rule 11 and other federal statutes. In discerning the federal intent, the court examined seven decisions from federal district courts in Georgia. *East-Bibb Twiggs* was among them. All the cases but one involved the Georgia common-law abusive litigation remedy that had been superseded by the abusive litigation statute at issue. According to the Georgia appel-

late court, only in one case, *Chromatics, Inc. v. Telex Computer Products, Inc.*, 695 F. Supp. 1184 (N.D. Ga. 1988), did the court hold that it had jurisdiction of the abusive litigation claim. From the federal cases embracing the majority rule, the Georgia court seems to have drawn the conclusion that Congress intended Rule 11 to be the exclusive remedy for abusive litigation. From the Georgia court's synopses of the federal courts' holdings, however, only *East-Bibb Twiggs* really supports the conclusion. By the Georgia court's reckoning, in two cases "the courts characterized [the common-law abusive litigation] claim as a permissive counterclaim under federal law, thereby holding that they were without subject matter jurisdiction of the claim in a non-diversity case." 234 Ga. App. at 423. In two other cases,

"the courts held that [the common-law abusive litigation] claim may not be raised in federal court even if as a permissive counterclaim it satisfies requirements for diversity jurisdiction, because it is arguably a procedural device which federal courts would not be subject to follow under the Erie doctrine and not a substantive cause of action." 234 Ga. App. at 423.

In another case, the abusive litigation claim was dismissed for failure to give required notice. After reviewing state and federal law for legislative intent, the court finished its opinion by analogizing to an unspecified provision of the Restatement (Second) of the Conflict of Laws that governs relationships between courts of different states: "The court of the forum in which the proceeding occurred has the overriding interest in determining questions concerning the sanctions to be imposed for litigation abuses in that proceeding." 234 Ga. App. at 424.

A California state court has expressly disagreed with the holding of *East-Bibb Twiggs*. In *Del Rio v. Jetton*, 55 Cal. App. 4th 30, 63 Cal. Rptr. 2d 712 (1997), the Court of Appeal reversed a trial court's dismissal of a malicious prosecution action brought by police officers who had been defendants in a federal civil rights action. *East-Bibb Twiggs* was the only case cited to the Court of Appeal on the preemption issue. 55 Cal. App. 4th at 37. With regard to the Georgia case, the California court stated:

"The fact that Congress has provided certain remedies to a party forced to defend a meritless civil rights claim, or who is subjected to baseless court filings, does

not demonstrate an intent to preclude a subsequent state tort action where the claim was not only frivolous or entirely without merit, but also was motivated by actual malice against the defendant. The risk of a 'chilling effect' is limited to those plaintiffs whose intent in filing a civil rights claim is malicious. There is no basis in history or logic to conclude that Congress intended to encourage such claims." 55 Cal. App. 4th at 37-38.

The second reason McShares gives for not applying *East-Bibb Twiggs* is that "civil rights litigants have an exclusive federal law remedy for recovery of attorneys' fees and costs by the prevailing party," 42 U.S.C. § 1988, that is not available to litigants in other areas of federal law, including antitrust. As we have seen, the California court did not even believe that civil rights litigants' remedies should be limited to those provided by the federal statute and rule.

The third reason McShares suggests for downplaying the significance of *East-Bibb Twiggs* is that the remedies provided by Rule 11 have been significantly limited by amendments since *East-Bibb Twiggs*. The case cited by McShares, *Kiser v. Boeing Co.*, 163 F.R.D. 13 (D. Kan. 1995), for the proposition that the 1993 amendments defanged Rule 11, lends little support for that general proposition and is readily distinguishable from the present case. Comparison of Rule 11 before and after the amendments, however, confirms that the breadth of the remedies has been narrowed.

In the present case, the district court's reasoning depends on a precise identity of federal preemption of bankruptcy proceedings and federal jurisdiction of actions brought under a federal antitrust statute. The two are not precisely the same, however, and the difference between them is significant.

Congressional power to preempt state law is derived from the Supremacy Clause of Art. VI of the United States Constitution. In deciding that Congress' enactment of the Communications Act and creation of the Federal Communications Commission had not preempted state regulation of certain aspects of intrastate ratemaking, the United States Supreme Court reviewed the various theories of preemption:

"Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977), when there is outright or actual conflict between federal and state law, *e.g., Free*

*v. Bland*, 369 U.S. 663 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52 (1941)." *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 368-69, 90 L. Ed. 2d 369, 106 S. Ct. 1890 (1986).

Congress was charged with establishing "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., art. I, § 8. Thus, it enacted the Bankruptcy Act, 11 U.S.C. § 101 *et seq.* (1994) and delegated power to the Supreme Court to prescribe bankruptcy procedural rules, 28 U.S.C. § 2075 (1994), and established the system of bankruptcy courts. Preemption occurs in bankruptcy law because the Constitution grants Congress plenary powers over bankruptcies, and the preemption is preemption of the field.

Antitrust law presents a different picture. Federal antitrust law is comprised of not one comprehensive act, but rather several narrower statutory schemes that were passed at various times in response to various historical stimuli. See Historical and Statutory Notes, Codifications, U.S.C.A., Title 15, Ch. 1; 15 U.S.C. § 12(a) (1994). The Sherman Act, which dates from the late 19th century, comprises §§ 1 to 7 of Title 15. It confers jurisdiction "to prevent and restrain violations of sections 1 to 7 of this title" on the federal courts, 15 U.S.C. § 4 (1994), and that jurisdiction is exclusive. *Blumenstock Bros. v. Curtis Pub. Co.*, 252 U.S. 436, 440, 64 L. Ed. 649, 40 S. Ct. 385 (1920).

In *California v. ARC America Corp.*, 490 U.S. 93, 104 L. Ed. 2d 86, 109 S. Ct. 1661 (1989), the Supreme Court held that, even though under federal law indirect purchasers are prohibited from recovering damages for violations of federal antitrust laws, indirect purchasers were permitted to recover under state antitrust law in a case where both federal and state antitrust laws were involved. The Supreme Court's reasoning included the precept that antitrust is an area of the law traditionally regulated by the states: "Given

the long history of state common-law and statutory remedies against monopolies and unfair business practices, it is plain that this is an area traditionally regulated by the States." 490 U.S. at 101. Thus, the court applied the "presumption against finding preemption of state law in areas traditionally regulated by the States." 490 U.S. at 101. The Supreme Court further stated: "Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies. 21 Cong. Rec. 2457 (1890) (remarks of Sen. Sherman)," and "on several prior occasions, the Court has recognized that the federal antitrust laws do not pre-empt state law." 490 U.S. at 102. Thus, the Supreme Court found nothing in the Sherman Act that manifests a congressional intent to preclude state regulation of antitrust matters. Nor is there an express statement by Congress that state law is preempted. In the absence of federal preemption of the field of antitrust law, the Kansas Legislature devoted much of Chapter 50 of the Kansas statutes to regulation of restraint of trade and unfair trade practices. Thus, there is no field preemption, and all that remains for our consideration is the possibility of conflict preemption. *Louisiana Public Service Comm'n v. FCC*, 476 U.S. at 368-69. See *Elkins v. Showcase, Inc.*, 237 Kan. 720, 727, 704 P.2d 977 (1985).

In *Del Rio v. Jetton*, 55 Cal. App. 4th 30, the defendants argued that by enacting 42 U.S.C. § 1988, Congress intended to occupy the entire field of remedies for civil rights actions. The California Court of Appeal disagreed, pointing out that subjective bad faith is not required for an award of attorney fees under § 1988, whereas "[i]n contrast, a successful action for malicious prosecution in California requires proof not only that the underlying action was brought without probable cause, but also that it was initiated or continued with malice." 55 Cal. App. 4th at 36. Further, § 1988 is limited to recovery of fees and costs and provides no recovery for damages to reputation or emotional distress resulting from a civil rights violation.

The California Court of Appeal found no conflict between state and federal law that would mandate preemption:

"State law is preempted to the extent that it actually conflicts with federal law, as when it is impossible for a private party to comply with both state and federal

requirements, or when the state law imposes an obstacle to the accomplishment of the will of Congress. [Citation omitted.] No such obstacle exists in this case. Congress intended the fee-shifting provision in section 1988 to encourage plaintiffs to bring good faith civil rights actions, and to deter plaintiffs from bringing civil rights actions which lack foundation. A tort action for malicious prosecution against a plaintiff who brought a civil rights action without foundation, *and* with malice does not conflict with either of those purposes." 55 Cal. App. 4th at 36-37.

We find the California court's rationale persuasive and agree that no conflict exists that would preempt our state law.

In the present case, only the Barrack defendants argue that federal antitrust law preempts McShares' malicious prosecution and abuse of process claims. Aside from *East-Bibb Twiggs*, the cases they cite for this proposition are from the fields of bankruptcy and labor relations, both of which, according to Barrack defendants, entirely displace state law, citing *Char v. Matson Terminals Inc.*, 817 F. Supp. 850, 858 (D. Hawaii 1992) (former employee's defamation claim preempted by federal labor law). They cite no authority that would support the proposition that federal antitrust regulation entirely displaces state law.

The other appellees adhere more closely to the district court's rationale. They contend that Fed. R. Civ. Proc. 11 preempts state common-law actions for malicious prosecution and abuse of process that arise out of antitrust litigation because it is within the exclusive jurisdiction of the federal courts. In other words, they contend that the exclusive remedy for a party that has been the target of a malicious Sherman Act lawsuit is under Rule 11. Even the Barrack defendants contend that Congress' authorization of Rule 11 "sanctions for the filing of frivolous antitrust petitions should be read as an implicit rejection of other penalties including the kind of substantial damage awards that might be available in state court tort suits." This is the crux of their case, but appellees cite no authority that unqualifiedly supports it.

As we have seen, *Edmonds* and *Gonzales* are bankruptcy cases. That field of substantive law is completely occupied by federal law, and sanctions were authorized by a federal bankruptcy procedural rule as well as by Rule 11. *East-Bibb Twiggs* is a federal civil rights

action in which sanctions were statutorily authorized. Rule 11 was not an exclusive remedy in those cases.

Nor is Rule 11 a remedy that excludes tort remedies. In *Cohen v. Lupo*, 927 F.2d 363 (8th Cir. 1991), the federal Court of Appeals reversed the district court's dismissal of Cohen's malicious prosecution complaint. Cohen, along with more than 30 others, had been sued by clients of the law firm of Lupo & Stemmler on unmeritorious allegations of securities fraud. After 4 years of discovery produced no probative evidence of fraud, the district court granted summary judgment in favor of Cohen. Upon Cohen's Rule 11 motion, the district court awarded $100,000 for bad faith conduct. Then, Cohen filed a malicious prosecution suit seeking to recover the other $900,000 in fees and costs he had incurred in defending against the securities fraud allegations. The district court dismissed the malicious prosecution complaint on the ground that imposition of Rule 11 sanctions was res judicata. The Court of Appeals disagreed:

"Rule 11 and the tort of malicious prosecution differ in their nature, the elements of the claims, and the potential remedies.

"The district court did not decide whether the [original action] complaint was filed without probable cause, whether Lupo & Stemmler acted with malice, or the amount of damages Cohen suffered as a result of Lupo & Stemmler's misconduct. Those inquiries are irrelevant under Rule 11, but are the sum and substance of the tort of malicious prosecution. The nucleus of operative fact necessary to maintain an action for malicious prosecution includes the conclusion of the underlying action. Whether Cohen would be victorious in the [original] litigation could not have been determined until the conclusion of that case.

"Federal Rule of Civil Procedure 11 grants a court discretion to discipline parties and counsel for conducting litigation in bad faith or in a frivolous and abusive fashion. Rule 11 is a procedural tool that under the Rules Enabling Act can not 'abridge, enlarge or modify any substantive right.' 28 U.S.C. § 2072. Rule 11 sanctions must be sought by motion in a pending case; there can be no independent cause of action instituted for Rule 11 sanctions. *Port Drum Co. v. Umphrey*, 852 F.2d 148, 151 (5th Cir. 1988).

"On the other hand, the common law tort of malicious prosecution is a claim in its own right under applicable state law. In Missouri, malicious prosecution requires proof that: (1) the underlying offending lawsuit was initiated or maintained without probable cause; (2) the plaintiff in the initial suit acted with malice; (3) the proceeding terminated in favor of the defendant; and (4) the defendant suffered damages as a result of the suit. *Stafford v. Muster*, 582 S.W.2d 670, 675

(Mo. 1979). Rule 11 can not abridge the substantive state law of malicious prosecution, nor was it adopted to serve as a surrogate for an action based upon a claim of malicious prosecution resulting from frivolous, harassing, or vexatious litigation.

"The district court recognized that the $100,000 award under Rule 11 represented merely 'a fraction of the fees and costs incurred by [Cohen].' Lupo & Stemmler subjected Cohen to years of vexatious litigation and induced costs far exceeding that of the original investment. Cohen should have the chance to prove that [the original action] was conducted in such bad faith that it constituted malicious prosecution and, if successful in so proving, be compensated for his loss." 927 F.2d at 365.

In *Del Rio*, the California Court of Appeal also found no merit in the defendants' preemption argument based upon Rule 11. As we previously noted, the court disagreed with the holding in *East-Bibb Twiggs*. In rejecting the defendants' Rule 11 preemption argument, the court stated:

"In *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* (1991) 498 U.S. 533, 553 [111 S. Ct. 922, 934, 112 L. Ed. 2d 1140], the Supreme Court rejected a claim that rule 11 created a federal common law tort of malicious prosecution. 'The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses. . . . [W]e are confident that district courts will resist the temptation to use sanctions as substitutes for tort damages.' Nothing in rule 11 indicates an intent to occupy the entire field of groundless suits brought for malicious purpose, nor is there any conflict between rule 11 and a damages action for such malicious prosecution." 55 Cal. App. 4th at 37.

In the present case, the district court dismissed the applicability of *Cohen* on the ground that it "arose out of general civil litigation and was not premised upon a specifically preemptive Federal statute." For the same reason, the district court distinguished *Business Guides* and *Lightning Lube* from the present case. Examination of those three opinions reveals that the subject matter of each lawsuit is federally controlled and that in each lawsuit pendent state claims were asserted. *Cohen* involved securities, *Business Guides* involved copyright infringement, and *Lightning Lube* involved RICO. See 15 U.S.C. § 77a *et seq.* (1994); 17 U.S.C. § 101 *et seq.* (1994); and 18 U.S.C. § 1961 *et seq.* (1994).

Even if the district court's characterization of *Cohen*, *Business Guides*, and *Lightning Lube* as involving only "general civil litiga-

tion" were accurate, it would not be a sound reason for rejecting the principle they carry—Rule 11 is not an exclusive remedy, no matter what category of substantive law is involved. Rule 11 is a procedural tool with the central purpose of deterring unfounded claims, defenses, and contentions in federal district court. "Rule 11 sanctions are not tied to the outcome of litigation; the relevant inquiry is whether a *specific filing* was, if not successful, at least well founded. Nor do sanctions shift the entire cost of litigation; *they shift only the cost of a discrete event.*" (Emphasis added.) 498 U.S. at 553. The Advisory Committee Notes contain the following comments on the 1993 amendments to Rule 11:

"*Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions.* It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. *See Chambers v. NASCO*, [501 U.S. 32, 115 L. Ed. 2d 27, 111 S. Ct. 2123] (1991). . . . Finally, it should be noted that *Rule 11 does not preclude a party from initiating an independent action for malicious prosecution or abuse of process.*" (Emphasis added.)

Given that Rule 11 would not bar McShares' bringing an independent action against the defendants/appellees for malicious prosecution or abuse of process in federal district court, the present state court action should not be dismissed on the ground that Rule 11 is an exclusive remedy.

Having concluded that the entire field of antitrust has not been preempted by federal law and that Rule 11 is not an exclusive remedy, all that remains for our consideration are issues of state public policy that the parties have called to the court's attention.

A state malicious prosecution action will lie only where the outcome of the federal case was favorable to the state court plaintiff. In that circumstance, the decision already has been made that there was no actionable antitrust violation by the state court plaintiff. The state court action would not include a redetermination of the question whether its plaintiff violated antitrust law. The determinations that would be made in the state court action would be

whether there was probable cause for the federal action plaintiffs to allege that the state court plaintiff committed violations of antitrust law and, if not, whether the allegations were made with malice. *Lindenman v. Umscheid*, 255 Kan. 610, 624, 875 P.2d 964 (1994). Those determinations would not cause different results from the federal action. Nor is there potential for a different result in the abuse of process count. The essential elements of the action are a knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship, which resulted in damage to the state court plaintiff. *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 653-54, 621 P.2d 411 (1980).

With regard to potential for contravening federal policy, defendants/appellees suggest that state courts' entertaining malicious prosecution actions by successful federal antitrust litigants will dampen the enthusiasm for private parties' bringing antitrust actions. They cite antitrust case law endorsing a federal policy of encouraging privately prosecuted actions. The federal policy, however, does not extend to encouraging unfounded private antitrust actions. Moreover, for earnest private federal antitrust plaintiffs, the incentive of treble damage awards, 15 U.S.C. § 15(a) (1994), probably outweighs whatever disincentive might be posed by the possibility of a state court action for malicious prosecution.

In the same vein, it is argued by defendants/appellees that the state court action constitutes a collateral attack on the federal court judgment and that the state court's entertaining it would frustrate finality. Rather than being challenged, the finality of the federal court judgment is a necessary element in a malicious prosecution action. As for the perpetuation of litigation between or among the parties to the underlying antitrust action, there is no federal policy that defendants/appellees can point to that would preclude or even discourage a party injured by wrongful litigation from seeking redress. That the redress for malicious prosecution is being sought in a subsequent suit rather than as an adjunct proceeding in the underlying action would seem to be necessitated by the requirement of finality.

In its journal entry of judgment, the district court stated that even if the substantive law of the present case were not preempted,

McShares' claims were barred "by operation of Federal . . . procedure." In particular, the statute of limitations and personal jurisdiction questions raised by some of the defendants "would require resolution of complex issues arising out of the Federal Rules of Civil Procedure . . . . Such determinations would certainly present a potential conflict in the interpretation of specific Federal procedural rules by a State Court of an area clearly within the exclusive province of the Federal Courts." This reasoning could apply to any state malicious prosecution action in which the underlying suit was in federal court regardless whether the substantive law was state or federal. Thus, by its own overbreadth, the rationale is self-defeating.

Finally, defendant Weinstein contends that this court's deciding that McShares' claims are actionable in state court would amount to usurpation of the legislative authority of Congress and, thus, violates the doctrine of separation of powers. Leaving aside the question of whether interaction of the federal legislative and state judicial branches falls within the doctrine, we can turn to the substance of the contention for a simple resolution of it. Weinstein's position is that Congress' failure to promulgate or enact an antitrust analogue to Bankruptcy Rule 9011 or 42 U.S.C. § 1988 limits remedies to Rule 11 sanctions. In other words, the premise of his argument is that Rule 11 is the exclusive remedy so that any tort remedy would be usurpation of the legislative function. As discussed above, the premise of the argument is faulty.

We conclude the district court erred in dismissing appellant's petition on the ground that appellant's claims were preempted by federal law. We note that the parties briefed additional issues, none of which was decided by the district court; thus, they were not subject to being cross-appealed or considered by this court on appeal.

The judgment of the district court is reversed, and the case is remanded for further consideration in conformity with this opinion.