NOT DESIGNATED FOR PUBLICATION

No. 122,562

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MIDWEST CRANE AND RIGGING, LLC,
*Appellant*,

v.

THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS,
also Known as KANSAS CORPORATION COMMISSION,
an Agency of the State of Kansas, and MIKE J. HOEME,
*Appellees*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed August 27, 2021. Affirmed.

*Kurt S. Brack*, of Brown & Ruprecht, PC, of Kansas City, Missouri, for appellant.

*Brian G. Fedotin*, general counsel, special assistant attorney general, Kansas Corporation Commission, for appellee Kansas Corporation Commission.

*Stanley R. Parker*, assistant attorney general, for appellee Mike J. Hoeme.

Before POWELL, P.J., BRUNS, J., and STEVE LEBEN, Court of Appeals Judge Retired, assigned.

LEBEN, J.: Midwest Crane and Rigging, LLC appeals the dismissal of its suit against the Kansas Corporation Commission and the KCC's transportation director, Mike Hoeme. Midwest Crane claims that the KCC and Hoeme violated Midwest Crane's rights by arguing in administrative and court proceedings that one of the company's cranes had to be registered as a commercial vehicle under a federal law administered by the state.

That federal law is the Unified Carrier Registration Act, 49 U.S.C. § 14504a (2012), which generally requires motor carriers to pay a fee based on the size of its fleet of commercial motor vehicles. The term commercial motor vehicles includes self-propelled vehicles used commercially on the highway mostly for the transportation of passengers or cargo. See *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 849-53, 397 P.3d 1205 (2017).

For several years, Midwest Crane and the KCC disagreed about whether Midwest's cranes were covered by this provision. Midwest Crane argued that since its cranes were permanently attached to the truck bed, they weren't cargo. But the KCC contended that a crane was cargo even if permanently affixed.

The sequence of events that led to the case now before us began with a 2013 citation issued by a Kansas Highway Patrol trooper to a Midwest Crane driver. The trooper cited the driver for driving without proper Kansas vehicle registration; that citation was dismissed in the Johnson County District Court. The trooper also gave the driver a "Vehicle Examination Report" citing Midwest Crane for failure to pay the required fee under the Unified Carrier Registration Act.

The report led the KCC to send a notice of violation alleging failure to pay fees required by the Act along with an invoice for a $300 fine. Midwest Crane contested that fine in administrative proceedings before the KCC. And when the KCC persisted in its position that Midwest Crane's vehicles were covered by the Unified Carrier Registration Act, Midwest Crane filed the appropriate papers to appeal that administrative-agency decision to a court.

That appeal led to a full tour of the Kansas court system. Midwest Crane lost in the district court and again in the Kansas Court of Appeals. See *Midwest Crane &*

*Rigging, LLC v. Kansas Corporation Comm'n*, No. 114,168, 2016 WL 4161384 (Kan. App. 2016) (unpublished opinion). But the Kansas Supreme Court granted review and unanimously ruled in Midwest Crane's favor. 306 Kan. 845. Our Supreme Court's ruling established that Midwest Crane's vehicles weren't commercial motor vehicles under the Unified Carrier Registration Act, so no fees under that Act were required and no fine should have been issued. 306 Kan. at 853.

Midwest Crane then sued the KCC and Hoeme. Midwest Crane claimed malicious prosecution and abuse of process against both defendants, and it claimed that Hoeme had violated Midwest Crane's civil rights in violation of a federal civil rights statute, 42 U.S.C. § 1983. The district court granted motions by the KCC and Hoeme to dismiss the lawsuit.

When a lawsuit is dismissed based just on review of the petition, as happened here, we take as true the specific factual allegations made by the plaintiff. We then determine whether those facts and the reasonable inferences from them will support a legal claim against the defendant. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013). Midwest Crane has three separate legal claims, so we will next determine whether any of them might be viable on the facts Midwest Crane has alleged.

*Malicious Prosecution*

The first claim is for malicious prosecution. In Kansas, that requires (1) that the defendant started, continued, or procured some civil proceeding against the plaintiff, (2) acting without probable cause to do so and (3) with malice, (4) that the proceeding ended in the plaintiff's favor, and (5) that the plaintiff was damaged. *Lindenman v. Umscheid*, 255 Kan. 610, 624, 875 P.2d 964 (1994). Two of those elements are the focus of the parties' arguments on appeal.

At the outset, it's not clear that the KCC started, continued, or procured a civil proceeding against Midwest Crane. The KCC notes that the only judicial proceeding it participated in was an action brought by Midwest Crane to appeal the KCC's administrative decision. But we need not decide whether the first element of a malicious-prosecution claim is met because Midwest Crane cannot meet another required element—that the KCC and Hoeme acted without probable cause.

Midwest Crane alleges that the KCC and Hoeme (and the Kansas Highway Patrol, which Midwest Crane alleges was acting at the direction of the KCC and Hoeme) did not have probable cause to claim that Midwest Crane's vehicles were commercial motor vehicles under the Unified Carrier Registration Act. But probable cause requires only "a reasonable ground for suspicion . . . to warrant a cautious, or prudent, [person] in the belief that the party committed the act" complained of. *Nelson v. Miller*, 227 Kan. 271, 277, 607 P.2d 438 (1980).

Here, the KCC's argument was convincing to the district court and the Court of Appeals. Their rulings preclude the malicious-prosecution claim because "a decision by a competent tribunal in favor of the person initiating civil proceedings is conclusive evidence of probable cause." Restatement (Second) of Torts § 675, comment b (1977). The United States Court of Appeals for the Tenth Circuit, applying Kansas law, applied this rule in *Vanover v. Cook*, 260 F.3d 1182, 1190 (10th Cir. 2001), predicting that the Kansas Supreme Court would do so if the issue were directly before it. We agree. See *Vaughan v. Hornaman*, 195 Kan. 291, 299-300, 403 P.2d 948 (1965) (citing the rule but not applying it because the original judgment had been entered without jurisdiction).

So the agreement of the district court and the Court of Appeals with the KCC's position precludes a finding that the KCC lacked probable cause for its position. While the district court and our court turned out to be wrong on the law, the KCC's position was not so devoid of logic as to lack probable cause. Nor is there any allegation here that the

4

district court decision or that of our court was obtained by fraud or any improper means, circumstances that can justify an exception to this rule about probable cause and judicial rulings. See *Vaughn*, 195 Kan. at 300.

*Abuse of Process*

The second claim is for abuse of process. In Kansas, that requires (1) a knowingly illegal or improper use of legal process (2) for the purpose of harassing or causing hardship (3) that harms the targeted party. *Bloom v. Arnold*, 45 Kan. App. 2d 225, 230, 248 P.3d 752 (2011).

Midwest Crane alleges that the KCC "knew" Midwest Crane wasn't covered by the Unified Carrier Registration Act. If true—if the KCC knew that its legal position was wrong from the start—the KCC's actions would seem to have been improper harassment.

We're not sure that the mere allegation that the opposing party "knew" it was wrong on a contested legal position creates an abuse-of-process claim when the legal position is fairly debatable. The essence of an abuse-of-process claim is that a proper legal process is being used primarily for some improper purpose. See *Tappen v. Ager*, 599 F.2d 376, 379-81 (10th Cir. 1979) (applying Kansas law); Restatement (Second) of Torts § 682 (1977). Here, both the KCC's administrative process and the follow-on judicial proceedings were to settle the legal dispute over whether Midwest Crane's vehicles were covered by the federal Act. Even if KCC personnel disliked Midwest Crane for some reason and also wanted to harass Midwest Crane, the legal process was still being used primarily for its intended purpose—settling a reasonably disputed legal issue.

A more significant problem for Midwest Crane here, though, is that there's no "legal process" invoked by the KCC. In *Bloom*, our court said that there must be a *judicial* process of some sort, such as one begun with a writ, a warrant, a summons, or

5

some other judicial order. 45 Kan. App. 2d at 231. The proceedings initiated here by the KCC were administrative ones before that agency, not judicial proceedings before a court. In response to the defendants' argument that this *Bloom* requirement isn't met, Midwest Crane cites to only one potential legal process that led to a court proceeding—the traffic citation issued by the highway patrol trooper. But it can't support Midwest Crane's abuse-of-process claim against the KCC or Hoeme.

The abuse-of-process claim must relate, of course, to the abuse of some legal proceeding. Midwest Crane argues that the proceeding abused here "began with the issuance of a traffic citation, which is a summons." The traffic citation attached to the petition has a notice to appear, not a summons (usually a formal document issued by a court), so it's not clear it would qualify. In any case, though, the traffic citation was dismissed by the district court. So even if we viewed the notice to appear as sufficient legal process for an abuse-of-process action, the only legal proceeding begun by the traffic citation was dismissed separately from the main proceedings between Midwest Crane and the KCC. And that matters here.

First, even if we accept Midwest Crane's allegation that the trooper was acting at the KCC's behest in issuing the traffic citation, that citation was issued in 2013 and dismissed that same year, while there's a two-year period within which an abuse-of-process suit must be brought. See K.S.A. 60-513(a)(4); *Lindenman*, 255 Kan. at 620. This suit wasn't filed until 2018, well after the two-year period, and each defendant raised the statute of limitations in their motions to dismiss.

Further, while the traffic citation relates to the administrative process initiated by the KCC and the judicial appeal of the KCC's decision pursued by Midwest Crane, it's not the same proceeding and raised different legal issues. The traffic citation alleged operation of a vehicle lacking a Kansas registration in violation of a state statute, K.S.A.

6

2013 Supp. 8-142; the KCC administrative notice alleged a failure to pay fees under a federal statute.

In sum, the traffic citation can't be sufficient legal process to support an abuse-of-process claim against the KCC and Hoeme: It started a different proceeding on a different legal issue, and it was resolved in Midwest Crane's favor more than two years before this suit was filed. But that traffic citation is the only legal process Midwest Crane can point to. The rest of the KCC's proceedings were administrative, not judicial. Our court held in *Bloom* that "an abuse of process claim based on improper use of an administrative or other nonjudicial proceeding is insufficient as a matter of law." 45 Kan. App. 2d at 232.

Midwest Crane's final argument is that the judicial appeal it took from the KCC's decision took place in court, so the KCC's defense of its decision in court should qualify. But the only legal process issued in that court case would have been obtained by Midwest Crane when it filed its appeal of the KCC decision in court. That is not sufficient here to turn a reasonable dispute over a contested legal issue into a viable abuse-of-process claim against the KCC or Hoeme.

*Civil Rights Claim under 42 U.S.C. § 1983*

The third claim, only against Hoeme, alleges that Hoeme violated Midwest Crane's civil rights in violation of a federal statute, 42 U.S.C. § 1983. That statute makes a person who, under the authority of law, deprives someone of their legal rights liable for damages.

Hoeme has claimed qualified immunity, and the district court agreed that defense precluded a section 1983 claim against him. The United States Supreme Court has held that governmental officials have qualified immunity that protects them from civil liability when their conduct doesn't violate clearly established statutory or constitutional rights

7

that a reasonable person would have known about. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

When a governmental official claims qualified immunity, the plaintiff must show (1) that the official's actions violated the plaintiff's constitutional or statutory rights and (2) that the right was clearly established at the time of the alleged misconduct. See *Knopf v. Williams*, 884 F.3d 939, 946 (10th Cir. 2018); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 255, 261 P.3d 943 (2011). For the same reason Midwest Crane couldn't show a lack of probable cause to support its malicious-prosecution claim, it can't show a clearly established right to support its section 1983 claim.

After all, before our Supreme Court decided the legal issue in 2017, both a district court and our court agreed with the position the KCC and Hoeme had taken. When courts get the issue wrong, it's not the sort of clearly established legal issue that makes a governmental official liable for civil damages for acting in conflict with it.

The district court properly dismissed Midwest Crane's legal claims against the KCC and Hoeme. We therefore affirm the district court's judgment.

\* \* \*

POWELL, J., concurring and dissenting:  I join the majority opinion in almost every respect, except I must depart from my colleagues in their view that an abuse of process claim cannot arise from the alleged misuse of quasi-judicial administrative proceedings. Relying on *Bloom v. Arnold*, 45 Kan. App. 2d 225, 232, 248 P.3d 752 (2011), the majority concludes that Midwest Crane's allegation that the KCC and Hoeme misused the administrative process to harass and cause harm to it cannot succeed as a matter of law because the process that was allegedly misused was outside the judicial process. Slip op. at 5-7.

8

Admittedly, the *Bloom* panel's holding represents what appears to be the majority rule. See 45 Kan. App. 2d at 230-31 (majority of jurisdictions decline to recognize abuse of process in nonjudicial proceedings); *Moore v. Western Forge Corp.*, 192 P.3d 427, 439 (Colo. App. 2007) (same). But I would note that when given an opportunity to adopt the same rule years ago, our Supreme Court declined and allowed an abuse of process claim against a state agency to go forward. See *Lindenman v. Umscheid*, 255 Kan. 610, 623-24, 875 P.2d 964 (1994). Moreover, we are not bound by the panel's holding in *Bloom* and are free to go in a different direction when our convictions lead us there. See *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018) (one Court of Appeals panel has right to disagree with another).

I do not disagree that abuse of process claims must arise out of the misuse of the legal process, as "societies have attached liability—whether deferred or immediate—to litigation brought with malice and without probable cause." *Hillside Associates v. Stravato*, 642 A.2d 664, 667 (R.I. 1994). The essence of the abuse of process claim is to punish the misuse of the legal process itself. Prosser and Keeton, Law of Torts § 121 (5th ed. 1984). Thus, abuse of process of claims cannot arise outside of the legal process. Prosser and Keeton, Law of Torts § 121; see *Julian J. Studley, Inc. v. Lefrak*, 41 N.Y.2d 881, 884, 362 N.E.2d 611, 393 N.Y.S.2d 980 (1977) (affidavit sent to regulatory department requesting appropriate discipline not "process").

But at least one federal court has observed that with the expansion of the administrative state and the creation of numerous administrative tribunals,

> "[t]he same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun. When one's livelihood depends upon a public license, it makes little difference to him whether it is taken away by a court or by an administrative body or official. Nor should

his right to redress the injury depend upon the technical form of the proceeding by which it is inflicted. The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty." *Melvin v. Pence*, 130 F.2d 423, 426 (D.C. Cir. 1942).

Indeed, the Restatement (Second) of Torts § 680 (1977), has recognized: "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby."

We should adopt the rule expressed by the Rhode Island Supreme Court, which held:

"[T]he misuse of an administrative proceeding may give rise to claims for malicious prosecution and/or abuse of process. . . . [H]owever, . . . only quasi-judicial contested administrative determinations or proceedings that establish the legal rights, duties, or privileges of a party after a hearing and that embody sufficient attributes of judicial proceedings may generate causes of action for malicious prosecution or for abuse of process." *Hillside Associates*, 642 A.2d at 669.

The elements required to prove abuse of process "are a knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship, which resulted in damage[s]." *McShares, Inc. v. Barry*, 266 Kan. 479, 494, 970 P.2d 1005 (1998). Here, Midwest Crane's abuse of process claim arises out of its assertion that the KCC and Hoeme misused the quasi-judicial administrative process to harass and cause harm to it. Assuming such facts to be true, Midwest Crane has sufficiently pled an abuse of process claim. Thus, I would reverse the district court's dismissal of Midwest Crane's abuse of process claim and remand for further proceedings.